Ronald KUHN *v.* MAJESTIC HOTEL

CA 94-480                                            899 S.W.2d 845

Court of Appeals of Arkansas
En Banc
Opinion delivered June 14, 1995
[Rehearing denied July 26, 1995.*]

---

*Cooper, Robbins, and Mayfield, JJ., would grant.

24

*Lane, Muse, Arman & Pullen*, by: *Donald C. Pullen*, for appellant.

*Walter A. Murray*, for appellee.

JUDITH ROGERS, Judge. This is an appeal from the Workers' Compensation Commission's decision finding that appellant had failed to prove by a preponderance of the evidence that he sustained a compensable back injury or that the subsequent surgery was reasonable and necessary medical treatment. On appeal, appellant argues that there is no substantial evidence to support the Commission's decision. We disagree and affirm.

The record reveals that appellant worked for appellee as a cook. He had been working for two to three months when, on March 20, 1992, he allegedly slipped in a puddle of water in the walk-in cooler, striking the right side of his lower back on the corner of a wall and falling to the floor. Appellant was taken to St. Joseph's Hospital by ambulance. He was given a drug test; x-rays were performed; and he was given a shot and released. Subsequently, appellant was seen by several doctors and on May 21, 1992, Dr. James M. Arthur performed low back surgery. Appellant filed a claim for benefits. Appellee contested the claim contending that appellant did not slip and fall.

In a workers' compensation case, the burden rests on the claimant to establish his claim for compensation by a preponderance of the evidence. *Gencorp Polymer Products v. Landers*, 36 Ark. App. 190, 820 S.W.2d 475 (1991). In determining the sufficiency of the evidence to sustain the findings of the Workers' Compensation Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Marcoe v. Bell Int'l*, 48 Ark. App.

33, 888 S.W.2d 663 (1994). In cases where a claim is denied on the basis that a claimant failed to show entitlement to compensation by a preponderance of the evidence, the substantial evidence standard of review requires that we affirm if a substantial basis for the denial of relief is displayed by the Commission's opinion. *Brantley* v. *Tyson Foods, Inc.*, 48 Ark. App. 27, 887 S.W.2d 543 (1994). The question is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Johnson* v. *Riceland Foods*, 47 Ark. App. 71, 884 S.W.2d 626 (1994).

Appellant argues that it is undisputed that the injury he sustained to his back was clearly related to his employment, and thus compensable. We disagree.

The record reveals that appellant was the only person to witness his fall. He testified that he slipped in a large puddle of water around the cooler which caused him to fall backward six feet and strike a wall with his back. Appellant said that he began screaming and an ambulance had to come and take him to the hospital. The record indicates that appellant was taken to the hospital and given medication and released the same day.

Russell Kinsey, the executive chef, testified that he arrived in the area where appellant had allegedly fallen and appellant was lying on the floor. He asked appellant what happened and appellant said he slipped in a puddle of water. Mr. Kinsey said that he looked around and asked "where is the water?" According to Mr. Kinsey, appellant responded that he guessed that his uniform had mopped it up. Mr. Kinsey testified that he did not see any water on the floor. On cross-examination, appellant's counsel asked if water had ever accumulated on the floor around the cooler when it was being stocked. Mr. Kinsey replied that it did, but that the area was mopped every afternoon after deliveries and that it had been done that day before appellant's alleged fall.

The medical records reveal that appellant had a consultation with Dr. Stuart McConkie on May 18, 1992. Dr. McConkie's notes indicate that appellant's past history was negative as far as back trouble was concerned. However, other medical evidence reflects that, as early as 1978, appellant had minimal joint space narrowing at L5-S1, the same location as his recent injury. The

medical records also reveal that appellant had a history of spina bifida occult, a congenital anomaly of the vertebrae, and a past history of back problems at exactly the same location his recent back surgery was performed. In fact, he had a prior surgical procedure on the exact same area in 1990 because he had been involved in an automobile accident. Consequently, the record reveals that appellant failed to give Dr. McConkie an accurate history of his back problems.

Also, it appears in the record that appellant stated that he was referred by Dr. John Wilson to see another surgeon. The medical records indicate that Dr. Wilson did not advise appellant to see a neurosurgeon and, in fact, he stated that he did not feel appellant required back surgery.

The Commission stated in its opinion that:

> It is significant that claimant maintains he fell in a three or four foot puddle of water and no one was able to corroborate the existence of the large puddle of water. In fact, testimony was offered that there was not a puddle of water in the cooler. Furthermore, we are not persuaded that claimant was thrown backward approximately six feet from where he allegedly slipped before hitting a wall and falling to the ground. Also, we find that claimant's credibility is questionable. Not only was Dr. McConkie related a faulty history, claimant either intentionally or unintentionally misrepresented at the hearing what Dr. Wilson told him concerning seeing another surgeon. A review of the record indicates that Dr. Wilson did not advise claimant to see another surgeon. In fact, Dr. Wilson clearly stated that he was of the opinion claimant would not require back surgery.

██ Under the circumstances of this case, we are unable to find any causal connection between appellant's injury and his employment other than appellant's own assertion that a fall occurred. It is clear from the Commission's opinion that it did not find appellant's account worthy of belief. The dissent questions the Commission's credibility determination. However, it has been a long standing rule that it is the exclusive function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony. *Johnson* v. *Riceland Foods*, 47 Ark. App. 71,

884 S.W.2d 626 (1994). It is not the function of this court to weigh the evidence and determine where the preponderance of the evidence lay. *Beeson* v. *Landcoast*, 43 Ark. App. 132, 862 S.W.2d 846 (1993). In keeping with our standard of review, we conclude that the Commission's finding that appellant was not credible was a permissible one and that the Commission's opinion displays a substantial basis for the denial of relief. *See Shaw* v. *Commercial Refrigeration*, 36 Ark. App. 76, 818 S.W.2d 589 (1991).

Based on our decision with regard to the compensability of appellant's back surgery, we need not address his remaining point on appeal.

Affirmed.

COOPER, ROBBINS, and MAYFIELD, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I must respectfully dissent from the prevailing opinion of this court which has affirmed a decision of the Workers' Compensation Commission denying compensation benefits to the appellant. The Commission made two specific findings: (1) "claimant failed to prove by a preponderance of the *credible* evidence that he was injured in the course and scope of his employment," and (2) "claimant failed to prove by a preponderance of the evidence that there is any causal connection between the May 21, 1992, low back surgery and the alleged slip and fall." (Emphasis by the Commission).

The Commission therefore reversed the administrative law judge's decision which found that the claimant had sustained a compensable injury arising out of and in the course of his employment with the Majestic Hotel in Hot Springs, Arkansas, when he fell while engaged in his duties as a cook at the hotel. The law judge also found that the surgery performed on appellant on May 21, 1992, was reasonable and necessary treatment for appellant's March 20, 1992, injury.

On appeal to this court our duty is to affirm the Commission if its finding are supported by substantial evidence. Substantial evidence is correctly defined in the majority opinion as "such relevant evidence as a reasonable man might accept as adequate to support a conclusion," and the opinion correctly states that in determining the sufficiency of the evidence we are to consider the evidence in the light most favorable to the Commission's findings.

Omitted, however, by the majority opinion are three other rules that should be applied in this case. The application of these rules, in my judgment, requires the reversal of the Commission's decision with directions to allow benefits. Those rules are:

1. If the appellate court is convinced that fair-minded persons, with the same facts before them, could not have reached the conclusion arrived at by the Commission the decision of the Commission should be reversed. *International Paper Co.* v. *Tuberville*, 302 Ark. 22, 786 S.W.2d 830 (1990); *Price v. Little Rock Packaging Co.*, 42 Ark. App. 238, 856 S.W.2d 317 (1993).

2. The Commission may not arbitrarily disregard the testimony of any witness; there must be some basis for disbelieving even a party. *Knighton* v. *International Paper Co.*, 246 Ark. 523, 527, 438 S.W.2d 721, 723-24 (1969); *Butler* v. *Director*, 3 Ark. App. 229, 624 S.W.2d 448 (1981); *Richards* v. *Daniels, Director*, 1 Ark. App. 331, 615 S.W.2d 399 (1981).

3. Even, if the claimant is untruthful, compensation cannot be denied for that reason alone. *Boyd* v. *General Industries*, 22 Ark. App. 103, 113, 733 S.W.2d 750, 755 (1987); *Guidry* v. *J&R Eads Construction Co.*, 11 Ark. App. 219, 222, 669 S.W.2d 483, 485 (1984).

The majority opinion quotes the pivotal paragraph of the Commission's decision, and I want to quote a portion of the dissenting Commissioner's opinion which replies to the opinion by the majority of the Commission.

> In finding that this claim was not compensable, the majority relies primarily on the self-serving, uncorroborated testimony of Mr. Kinsey, claimant's supervisor, that he did not observe any water on the floor. However, the remaining evidence indicates that claimant testified that he slipped on water; that Kinsey stated that it was not unusual for water to accumulate in the area; that when Kinsey advised claimant that he did not see any water on the floor, claimant replied that his uniform must have mopped it up; and that claimant's wife testified that the back of his uniform was wet following the accident.

> Next the majority is "not persuaded that claimant was thrown backward approximately six feet from where he

allegedly slipped before hitting a wall and falling to the ground." This is an untenable statement considering the fact that claimant is six feet four inches tall and that respondent's own witness (Kinsey) testified that he could see how claimant could have been thrown six feet and hit his back on the wall, as alleged by claimant.

In further challenging claimant's vision[sic] of his injury, the majority accuses claimant of misrepresentation after claimant testified that Dr. Wilson advised him to see another doctor that he "felt comfortable with, a surgeon." However, Dr. Wilson did opine that claimant was in need of additional medical treatment but he would not provide such treatment due to claimant's desire to be treated by a physician with whom he was familiar. Thereafter, Dr. Wilson reported that "Dr. Chakales is quite capable of handling a back problem." Dr. Chakales is an orthopedic *surgeon*. Thus, a fair and impartial review of the entire record does not support the majority's finding that claimant misrepresented the conversation he had with Dr Wilson concerning which type of physician could provide the recommended additional treatment. It should also be noted that *after* claimant saw Dr. Wilson, respondents authorized claimant to receive treatment through the Hot Springs *Neurosurgery* Clinic.

In an additional challenge to claimant's testimony concerning his injury, the majority states the following:

> Dr. McConkie's evaluation was based upon an incorrect belief that claimant did not have a history of back problems. Because of this faulty premise, we find that Dr. McConkie's evaluation is flawed.

In my opinion, the fact that Dr. McConkie failed to take down an accurate history does not support the finding that the evaluation is flawed or that claimant is not credible. Dr. Maruther, the first physician to treat claimant following the accident, and Dr. Arthur, to whom Dr. Maruther referred claimant, were aware of, and documented, claimant's past back difficulties. Claimant was evaluated by Dr. McConkie *after* he had been seen by Drs. Maruther and Arthur. More importantly, Dr. McConkie was not asked to

evaluate claimant's condition and render an opinion as to whether it was causally related to his employment. Dr. McConkie was only asked to render an opinion as to whether his current condition warranted back surgery. Thus, Dr. McConkie would not be particularly concerned about any history of prior difficulties. A "flawed" history certainly would not affect his opinion concerning the need for surgery. Therefore, it is of no great consequence that Dr. McConkie took down an inaccurate history.

The majority finds that claimant's back surgery was not causally related to the slip and fall at work. The majority notes claimant's history of back problems, as well as the prior surgery at L4-L5. Thus, the majority is actually finding that the back condition which warranted surgery constituted a mere recurrence of a preexisting condition. However, this finding completely ignores the testimony of Dr. Arthur, who performed the prior surgery, that claimant had been released from his care without any physical restrictions. Moreover, claimant was able to return to work without any difficulties until he fell at work.

Further, the majority points to the evidence that claimant's surgery was at the exact same level as the 1990 nucleotome disketomy and relies heavily on the opinion of Dr. Wilson that surgery was not indicated. It should be noted that there is no credible medical evidence whatsoever to suggest that claimant's current back condition is a mere recurrence of his preexisting condition. Dr. Wilson's opinion that claimant did not need surgery was based on a one time evaluation done 13 days after the accident, with only the benefit of plain X-rays and a CT scan. It is important to note that the report of the CT scan cautioned that "[d]etail is limited due to patient's size." In contrast, Dr. Arthur evaluated claimant subsequent to his visit with Dr. Wilson and believed surgery was absolutely necessary after observing claimant's condition deteriorate significantly, after a myelogram clearly revealed a herniated nucleus pulposus at L4-5, and after a qualified orthopedic surgeon agreed that surgery was indicated.

The final point made in the opinion of the dissenting Com-

missioner pertains to a point in the law judge's opinion which the majority opinion of the Commission does not address. The law judge said:

> I feel compelled to point out that all of the initial correspondence filed by the respondent-carrier in this case initially indicated that the claim had been accepted as compensable and benefits paid in a timely manner. In fact, as reflected by correspondence from claimant's attorney, on April 30, 1992, the parties agreed to allow the claimant to receive medical treatment through the Hot Springs Neurosurgery Clinic. It was not until after Dr. James Arthur recommended surgery that the respondents requested a second (actually, a third) opinion concerning the necessity for surgical intervention. The following correspondence contained in the Commission file is hereby incorporated by reference and made a part of the record herein: The April 6, 1992 letter from Melba Garron, Claims Manager for respondent, to this Commission, accepting compensability of this claim; the April 30, 1992 letter from claimant's attorney to this Administrative Law Judge, with copy to Melba Garron, reflecting that the parties had agreed to allow the claimant to obtain medical treatment by Dr. Allen C. Gocio; the May 12, 1992 letter from Melba Garron to the claimant advising him to return to Dr. Wilson for a second opinion concerning surgery, copy to claimant's attorney and Dr. Wilson; the May 14, 1992 letter from Melba Garron to this Commission reflecting that respondents had not denied medical treatment, but, due to circumstances, were requesting a third medical opinion; a Commission Form filed by the insurance carrier reflecting suspension of compensation, both medical and indemnity benefits, on May 16, 1992, reason for suspension, unreasonable medical.

Based upon my review of the proceedings in this case in the light of the law by which we are bound, it is my view that fair-minded persons, with the same evidence before them could reach only one conclusion: The Commission should be reversed and this matter remanded with directions for the Commission to allow benefits.

COOPER and ROBBINS, JJ., join in this dissent.