Bennie MOORE v. DARLING STORE FIXTURES

CA 86-472                                          732 S.W.2d 496

Court of Appeals of Arkansas
Division II
Opinion delivered July 8, 1987

22

*Anthony W. Bartels*, for appellant.

*Walker, Snellgrove, Laser & Langley*, by: *David N. Laser*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from a decision of the Workers' Compensation Commission holding that appellant had failed to prove by a preponderance of the evidence that he had sustained a work-related injury. We reverse and remand.

On February 24, 1983, appellant fell while at work. There were no witnesses to the fall and appellant has no memory of how it happened. He was discovered unconscious on the floor by co-workers. Appellant was taken to the emergency room at a Corning, Arkansas, hospital where he was diagnosed by Dr. DeLuca as having sustained a concussion with possible skull fracture and possible intracerebral bleeding or subdural hematoma. He was then transferred by ambulance to St. Bernard's Regional Medical Center in Jonesboro and, upon admission, it was discovered he had an abnormal electrocardiogram. Dr. R. G. Burns originally diagnosed an acute myocardial infarction, and after treatment, appellant was discharged on March 4, 1983, with a diagnosis of acute closed-head injury, two skull fractures, and acute myocardial infarction. On April 26, 1983, he had a coronary artery bypass at Baptist Memorial Hospital in Memphis, Tennessee.

Appellant filed a workers' compensation claim contending he suffered a compensable head injury when he fell and that this contributed to his heart attack. At the hearing before the law judge, appellant testified that he was standing on a forklift, putting merchandise on a shelf; that he got off the forklift, then started to get back up on it, and "that's the last thing I remember." He said he felt no blow to his head or anything else. The next thing he knew, he woke up in the hospital with a lump on his head. He also testified that a few weeks earlier some steel shelving had fallen and hit him in the left eye requiring a few stitches. He denied that this caused him any problems with his head or heart.

Appellant's mother and two of his friends testified that, prior

to his fall at work, appellant had suffered no heart disease or dizzy spells that they knew of, and that he had not complained of headaches or dizzy spells.

The medical records introduced into evidence contained a letter written by Dr. DeLuca on September 12, 1983, in which he stated that it was his opinion that appellant was not suffering from a heart attack at the time the doctor examined him in the emergency room on February 24, 1983, and another letter dated January 17, 1986, in which Dr. DeLuca stated, "It is a high probability that Mr. Moore had a heart attack on route by ambulance to St. Barnards [sic]."

The law judge held that appellant's fall and subsequent heart attack were not contributed to or caused by his employment and denied compensation. The full Commission affirmed, stating:

> The general test of compensability for a fall at work is set forth in Larson, *Workmen's Compensation Law*, § 12.11 and *Nu-Way Laundry & Dry Cleaners* v. *Palmer*, 12 Ark. App. 31, 670 S.W.2d 464 (1984). Compensation is denied when the basic cause of the harm is personal and the employment has not *significantly* added to the risk of injury.
>
> The claimant testified that he did not remember how or why he fell. He testified that he had not suffered from black-outs or heart trouble prior to the accident. His testimony is in direct conflict with the medical history given to Dr. Burns:
>
>> It was subsequently learned from the patient and from his mother and father he had complained of generalized body weakness associated with some discomfort in upper extremity for indeterminant period of time from days to weeks, prior to the head injury.
>
> Whether a fall at work is categorized as "unexplained" or "idiopathic" is a fact question to be determined by the Commission. . . . We find that the claimant sustained an idiopathic fall. . . .
>
> From the testimony, we are unable to tell if the claimant was on level ground when he fell, or if he was back on the

forklift at a dangerous height, or if he hit his head against any machinery. . . .

Claimant has failed to establish by a preponderance of the credible evidence of record that his injury arose out of his employment. Additionally, he has not shown that his employment significantly increased his risk of injury.

■ When one suffers an injury at work, the cause is, obviously, either known or unknown. Larson's treatise on workers' compensation law states that the most common example of a situation in which the cause of the harm is unknown is the unexplained fall in the course of employment and that most courts confronted with that situation have seen fit to award compensation. 1 Larson, *The Law of Workmen's Compensation*, § 10.31, at 3-87 (1985). However, injuries from idiopathic falls do not arise out of the employment unless the employment contributes to the risk or aggravates the injury by, for example, placing the employee in a position which increases the dangerous effect of the fall, such as on a height, near machinery or sharp corners, or in a moving vehicle. Larson § 12.11.

■■ The word "idiopathic" is defined in *Webster's Third New International Dictionary, Unabridged* (1976), as (1) peculiar to the individual, (2) arising spontaneously or from an obscure or unknown cause. Although the two concepts are frequently confused, Larson says "unexplained-fall cases begin with a completely neutral origin of the mishap, while idiopathic-fall cases begin with an origin which is admittedly personal and which therefore requires some affirmative employment contribution to offset the prima facie showing of personal origin." Larson § 12.11, at 3-314.

Our Arkansas cases have followed the above rules. In *Fairview Kennels v. Bailey*, 271 Ark. 712, 610 S.W.2d 270 (Ark. App. 1981), we relied upon a statement from Larson § 10.31 that "It is significant to note that most courts confronted with the unexplained fall problem have seen fit to award compensation," and we held that the claimant's explanation that, while engaged in her work-related duties she "fell and couldn't get up," was sufficient for the Commission to find that the claimant fell in the course of her employment. 271 Ark. at 715.

In *Country Pride* v. *Holly*, 3 Ark. App. 216, 624 S.W.2d 443 (1981), we discussed the rules pertaining to idiopathic falls and quoted from Larson. However, we upheld the finding of the Commission that appellant's fall in that case was caused by his voluntary intoxication and therefore was not compensable. *See* Ark. Stat. Ann. § 81-1305 (Repl. 1976). Thus, the idiopathic fall issue was not the decisive issue in that case.

In *Roc-Arc Water Co.* v. *Moore*, 10 Ark. App. 349, 664 S.W.2d 500 (1984), we upheld an award of compensation made on the basis that the claimant had suffered an unexplained fall, even though there was evidence in the record from which the Commission could have found the fall was idiopathic. An idiopathic fall was described in that case as being "an occurrence caused by a non-occupational illness or weakness personal to the claimant." 10 Ark. App. at 350.

Our most recent case is *Nu-Way Laundry & Cleaners* v. *Palmer*, 12 Ark. App. 31, 670 S.W.2d 464 (1984), in which we reversed a decision of the Commission that the claimant's fall arose out of and in the course of her employment. We said the Commission, in arriving at its decision, had fused the distinct categories of "unexplained" and "idiopathic" falls, and after reviewing the above case law in Arkansas, we stated:

> The present case goes further than any of the earlier ones in the unexplained/idiopathic line. The Workers' Compensation Commission relied upon *Fairview Kennels, supra,* and its own decision in *Moore* v. *Roc-Arc Water Co.*, WCC Claim No. D113610 (June 6, 1983), in holding that when a fall is attributable to either an unexplained or an idiopathic condition it is nonetheless compensable if the injury occurs while the claimant is doing required work. This ruling of the Commission extends the "unexplained" fall theory to the general rule stated by this Court in *Country Pride* v. *Holly, supra.* If we were to endorse the Commission's position in the instant case, any distinction between unexplained and idiopathic falls would become blurred and irrelevant.

12 Ark. App. at 33-34.

In Arkansas, a workers' compensation claimant

bears the burden of proving that his injury was the result of an accident that arose in the course of his employment, and that it grew out of, or resulted from the employment. *American Red Cross* v. *Wilson*, 257 Ark. 647, 649, 519 S.W.2d 60 (1975). "Arising out of the employment" refers to the origin or cause of the accident, while the phrase "in the course of the employment" refers to the time, place and circumstances under which the injury occurred. *Owens* v. *National Health Laboratories, Inc.*, 8 Ark. App. 92, 97, 648 S.W.2d 829 (1983). When a truly unexplained fall occurs while the employee is on the job and performing the duties of his employment, the injury resulting therefrom is compensable. This has been the effect of our holdings in *Fairview Kennels* v. *Bailey*, *supra*, and *Roc-Arc Water Co.* v. *Moore, supra*, and is in keeping with Larson's statement that "most courts confronted with the unexplained fall problem have seen fit to award compensation." Larson § 10.31, at 3-87. Larson says "work connection is shown by the fact that the injury occurred in the course of employment, and that the employment brought the employee to the place where he was injured at the time he was injured." Larson § 10.31, at 3-100.

Courts have approached this question in various ways but we agree with that taken in North Carolina. In *Taylor* v. *Twin City Club*, 260 N.C. 435, 132 S.E.2d 865 (1963), the court said:

> In the instant case the immediate cause of the fall is unknown. We have held that where an employee, while about his work, suffers an injury in the ordinary course of his employment, the cause of which is not explained, but which is a natural and probable result of a risk thereof, and the Commission finds from all of the attendant facts and circumstances that the injury arose out of the employment, an award will be sustained. *Robbins* v. *Bossong Hosiery Mills, supra*. In the Robbins case the employee, while reaching up to take some objects from a rack in the course of her employment, lost her balance and fell for some undisclosed reason. There was no evidence tending to show that the fall was caused by a hazard to which the employee was exposed apart from the employment. An award of compensation was upheld.

. . . .

This rule in unexplained-fall cases, which is applied in North Carolina and in most jurisdictions, was first declared in an English case—*Upton* v. *Great Central Railway Company* (1924) A.C. 302 (H.L.). In that case an employee fell on a railway platform in the course of a business errand. The platform was not slippery or defective in any way; the cause of the fall was completely unknown. Lord Atkinson said: "Having been done in the course of the employment of deceased, and the accident having been caused by the doing of it even incautiously, it must, I think, be held that the accident arose out of the employment of the deceased." The decision of the House of Lords was unanimous.

It has been suggested that this result in unexplained-fall cases relieves claimants of the burden of proving causation. We do not agree. The facts found by the Commission in the instant case permit the inference that the fall had its origin in the employment. There is no finding that any force or condition independent of the employment caused or contributed to the accident. The facts found indicate that, at the time of the accident, the employee was within his orbit of duty on the business premises of the employer, he was engaged in the duties of his employment or some activity incident thereto, he was exposed to the risks inherent in his work environment and related to his employment, and the only active force involved was the employee's exertions in the performance of his duties.

In the instant case, the Commission found appellant's fall to have been idiopathic in origin. However, the Commission's own comment on the evidence upon which it bases that finding demonstrates that the finding is not supported by substantial evidence. The Commission relies on a statement in the hospital discharge summary of Dr. Burns which indicates appellant may have been having some symptoms of heart problems prior to his fall. But the Commission states in its opinion, that "The exact time of the heart attack cannot be determined from the record . . . and it would be sheer speculation to say that the heart attack caused his fall. . . ." Moreover, the opinion states, "We are

unable to tell if the claimant was on level ground when he fell, or if he was back on the forklift at a dangerous height, or if he hit his head against any machinery. . . ."

Therefore, we hold there was not substantial evidence in the record on which the Commission could base its conclusion that the appellant suffered an idiopathic fall. Since this leaves no force or condition outside the employment from which the fall could have resulted, the appellant has met his burden of proving that his injury was the result of an accident that arose in the course of his employment and that it grew out of, or resulted from, the employment. We reverse the decision of the Commission and remand for it to determine the extent of the injury suffered by appellant as a result of his fall, any disability resulting therefrom, and the amount of compensation to which appellant is entitled.

Reversed and remanded.

COULSON and JENNINGS, JJ., agree.