Ronald KUHN *v.* MAJESTIC HOTEL

95-700                                                918 S.W.2d 158

Supreme Court of Arkansas
Opinion delivered March 25, 1996

*Donald C. Pullen*, for petitioner.

*Walter A. Murray*, for respondent.

DONALD L. CORBIN, Justice. Petitioner, Ronald Kuhn, appealed a decision of the Arkansas Workers' Compensation Commission to the Arkansas Court of Appeals, which affirmed the Commission's decision by a tie vote. *Kuhn v. Majestic Hotel*, 50 Ark. App. 23, 899 S.W.2d 845 (1995). We granted this petition for review of the decision of the court of appeals pursuant to Ark. Sup. Ct. R. 1-2(f). We reverse and remand.

Petitioner contends that he sustained a compensable low-back injury when he slipped and fell on the job at the Majestic Hotel in Hot Springs on March 20, 1992, which resulted in back surgery on May 21, 1992. The Commission reversed the decision of the Administrative Law Judge and dismissed petitioner's claim. The Commission found that petitioner failed to prove by the preponderance of the credible evidence that he was injured in the course and scope of his employment, and that there was any causal connection between the surgery and the alleged slip and fall.

In reviewing this case, we apply the following standard:

We review a decision of the Arkansas Court of Appeals

under Ark. Sup. Ct. R. 1-2(f), as though the case had been originally filed in this court. On appeal of a workers' compensation case from the court of appeals to this court, we view the evidence in the light most favorable to the commission's decision and affirm that decision if it is supported by substantial evidence. Substantial evidence exists if reasonable minds could have reached the same conclusion. Thus, before we reverse the commission's decision, we must be convinced that fair-minded persons considering the same facts could not have reached the conclusion made by the commission.

*Plante* v. *Tyson Foods, Inc.*, 319 Ark. 126, 127-28, 890 S.W.2d 253, 253-54 (1994) (citations omitted).

Three witnesses testified at the hearing on petitioner's claim: petitioner; Russell Kinsey, his supervisor; and Penny Kuhn, his spouse. Documentary medical evidence in the form of hospital reports and physicians' medical notes and correspondence was introduced, as well as the depositions of petitioner's physicians, internist Gopakumar Maruther and neurosurgeon James M. Arthur.

Petitioner testified that, on March 20, 1992, he had been employed by respondent as a cook for two or three months. Petitioner stated that his right leg was stiff as a result of a total knee fusion that predated his employment with respondent, but that he was having no problems with the knee and was working an average of ten to fourteen hours per day, six days per week before the fall. Petitioner stated that a female co-worker asked him to retrieve a ham from the hotel's walk-in cooler, that he walked to the cooler and had his hand on its door trying to open it when he slipped in water on the floor and hit a corner of the concrete wall six feet from the cooler with the lower-right part of his back. Petitioner stated that he fell to the floor screaming because his right leg was going numb and his back was hurting.

Mr. Kinsey testified that, as of March 20, 1992, he was the executive chef, that petitioner had been working under his supervision for a couple of months and was a good worker whose only physical complaint had been that his leg tired on the longer days. Mr. Kinsey stated that he arrived at the scene two or three minutes after petitioner's fall, and that three other persons were there when he arrived. Mr. Kinsey stated that petitioner seemed to be in pain and that he did not move petitioner. Mr. Kinsey testified that

petitioner lay on the floor about eighteen inches from the wall with his head toward the wall and his feet toward the door. Mr. Kinsey testified that if petitioner had fallen straight down, he could see that petitioner's back could have hit the wall because "it is a tight little area back there." Mr. Kinsey testified that petitioner told him that he had slipped in water, that Mr. Kinsey looked around and said: "Where is the water?" because he did not see any, and that petitioner replied: "Well, I guess my uniform mopped it up." Mr. Kinsey testified that it did not look like petitioner's uniform had water on it. Mr. Kinsey opined that, although it was not unusual for condensate to form on the tile floor outside the cooler, no water was there when petitioner fell. Mr. Kinsey stated that he was present when emergency-medical technicians picked up petitioner from the floor.

The record shows that petitioner was transported by ambulance to the emergency room of St. Joseph's Regional Health Center where he was diagnosed with acute lumbar strain and released with directions for bed rest, heat, medication, and follow up with Dr. Maruther. Mrs. Kuhn testified that, when petitioner was brought home from the hospital on March 20, 1992, he was wearing his uniform, and the back was wet and had dirt all over it. Petitioner was subsequently examined by several physicians and, on May 21, 1992, underwent back surgery, which, he testified, eliminated the numbness in his right leg and alleviated his back pain.

■ The Commission's stated reasons for its finding that petitioner failed to prove by the preponderance of the credible evidence that he was injured in the course and scope of his employment were that no one corroborated the existence of the water on the floor, petitioner did not persuade that he was thrown backward approximately six feet before hitting a wall and falling to the ground, and petitioner's credibility was questionable. We defer to the Commission as regards the issue of petitioner's credibility as a matter exclusively within the Commission's province. *Wade* v. *Mr. C. Cavenaugh's*, 298 Ark. 363, 768 S.W.2d 521 (1989); *Roberts-McNutt, Inc.* v. *Williams*, 288 Ark. 587, 708 S.W.2d 87 (1986). Focusing exclusively on the other evidence, we do not find substantial evidence that petitioner failed to prove that he was injured in the course and scope of his employment.

■■ The term "course of employment," as applied to compensation for injuries, refers to the time, place, and circum-

stances under which the injury occurs. *Deffenbaugh Indus.* v. *Angus,* 39 Ark. App. 24, 832 S.W.2d 869 (1992). Mr. Kinsey testified that he found petitioner in pain on the floor at petitioner's workplace during petitioner's work shift. The record reveals that petitioner is a large man, who measures six feet, four inches tall and, in March 1992, weighed approximately 280 pounds. Mr. Kinsey opined that, if petitioner had fallen straight down, his back could have hit the concrete wall six feet away. Regardless of whether water was on the floor, it is well established that even an unexplained fall or a so-called "idiopathic fall," which originates with a risk that is personal to the employee, may result in compensable injuries. *Moore* v. *Darling Store Fixtures,* 22 Ark. App. 21, 732 S.W.2d 496 (1987).

The Commission's stated reasons for its finding that petitioner failed to prove that there was any causal connection between the May 1992 surgery, which was performed by Dr. Arthur on the right side of petitioner's back at the fourth and fifth lumbar verte-brae ("L4–L5"), and the fall at the hotel were that petitioner had a history of back problems and that orthopedic surgeon Dr. John L. Wilson, to whom respondent referred petitioner, opined that sur-gery was not warranted. More specifically, the Commission noted that petitioner had been diagnosed with a congenital anomaly of the vertebrae known as spina bifida occulta, that medical notes from 1978 indicated that the space between petitioner's fifth lumbar and first sacral vertebrae ("L5–S1") was abnormal, and that petitioner underwent back surgery in 1990 at the L4–L5 level as a result of an injury suffered in an automobile accident.

On March 23, 1992, Dr. Maruther examined petitioner and ordered a CT scan of the lumbar spine. Dr. Maruther diagnosed petitioner with "low back pain due to a fall" and noted a prominent central bulging disc at the L4–L5 level. Dr. Maruther testified that the cause of the bulging disc and the back problems for which he treated petitioner in 1992 could have been petitioner's fall at the hotel. Dr. Maruther testified further that he had treated petitioner for various medical problems, including, in 1978, spina bifida occulta, a condition that causes back pain in some adults, and that petitioner had a minimal joint space narrowing at the L5–S1 level at that time.

Dr. Arthur testified that, more than two years before, he per-formed surgery at petitioner's L4–L5 level as a result of an automo-bile accident. Dr. Arthur testified further that petitioner had recov-

ered fairly well from that surgery, that he had released petitioner to light duty in October 1990, and that he had not seen petitioner again until April 1992. Dr. Arthur testified that, consistent with his usual office practice, his secretary had established that petitioner was "a workmen's comp case" before he saw petitioner by confirming with the workers' compensation carrier that petitioner had had a back injury at work.

Dr. Wilson's letter to the carrier regarding his examination of petitioner in April 1992 was introduced into evidence at the hearing. As to the cause of the injury, Dr. Wilson states that petitioner injured himself while gainfully employed by respondent on March 20, 1992, and that petitioner related that he fell, injuring his back. Dr. Wilson diagnosed petitioner with a lumbosacral strain with degenerative disc disease for which surgery was not indicated.

Finally, the record shows that, at the request of Dr. Arthur, petitioner was examined by orthopedic surgeon Dr. Stuart McConkie, whose consultation report, dated May 18, 1992, was introduced into evidence at the hearing. As to the cause of the injury, Dr. McConkie stated that petitioner slipped and fell at work, struck his back and developed back pain. Dr. McConkie stated that surgery was indicated.

On this record, we do not find substantial evidence that petitioner failed to prove that there was any causal connection between the fall at the hotel and the May 1992 surgery. Dr. Wilson's opinion that surgery was not indicated for petitioner's condition is not pertinent to the causation issue. The record contains no evidence that petitioner's congenital back problem or earlier back surgery caused the May 1992 surgery. The record does reveal that petitioner was released by Dr. Arthur to return to work in October 1990 after the earlier back surgery and that petitioner worked thereafter, without problem, prior to his fall at the hotel.

For the reasons stated above, we conclude that fair-minded persons considering the same facts could not have reached the conclusion made by the Commission. Thus, the case is reversed and remanded to the Commission for award of benefits.

Reversed and remanded.