Vicky CARMAN *v.* HAWORTH, INC.

CA 00-1267 45 S.W.3d 408

Court of Appeals of Arkansas
Division II
Opinion delivered May 30, 2001

*Blackman Law Firm*, by: *Keith Blackman*, for appellant.

*Phillip Cuffman*, for appellee.

LARRY D. VAUGHT, Judge. This is an appeal from a decision of the Workers' Compensation Commission finding that appellant, Vicky Carman, failed to prove by a preponderance of the evidence that she suffered a compensable injury while employed by appellee, Haworth, Inc. Appellant contends that the Commission erred in finding that she failed to prove by a preponderance of the

evidence that she suffered a gradual shoulder injury caused by rapid repetitive motion arising out of and in the course of her employment, and that the injury produced physical bodily harm, supported by objective findings, which was the major cause of her need for treatment. We disagree and affirm the Commission's decision.

Appellant began working for appellee in September 1998. Her position as an assembler required her to assemble fabric over panels for office cubicle walls. She would complete ten to fifteen panels per hour. This job required extensive hand and arm movements, use of a screw gun, and use of a heated knife to trim the fabric. Appellant's job also required her to lift rails or frames weighing five to fifteen pounds. In April 1999, appellant began to experience pain in her wrists, arms, and shoulders, with numbness and tingling across both shoulders. She felt that her hands were "asleep all the time." One Saturday in April, appellant was returning from lunch when her supervisor, Mike Hart, grabbed her purse strap as she passed him, jerking her arm back and causing excruciating pain in her left upper arm. Hart sent appellant to the company nurse, where appellant indicated that she was having symptoms of carpal tunnel syndrome. The nurse could not diagnose carpal tunnel and scheduled an appointment for her with the company doctor, who referred appellant to Dr. Michael Lack, a family practitioner. Appellant was also seen by Drs. Eric Hatley, Ron South, and Kip Owen.

Appellant was referred by Dr. Lack to Dr. South at the Internal Medicine Associates Neurology Clinic for EMG/NCV of both upper extremities for carpal tunnel syndrome. Dr. South's May 12, 1999, office notes indicate that he diagnosed moderate to severe carpal tunnel syndrome of the right upper extremity with mild to moderate carpal tunnel syndrome of the left upper extremity.

Dr. Hatley's office records indicate that he saw appellant on May 11, 1999. She complained of pain in both hands and upper arms. The records indicate that appellant was treated for carpal tunnel syndrome four to six years earlier. Dr. Hatley found a new problem of cervicalgia and carpal tunnel syndrome. Dr. Hatley prescribed Naproxin. Dr. Hatley's September 23, 1999, report indicates that appellant complained of left upper extremity pain, including mild increased shoulder pain. His notes stated that she was being treated by Dr. Owen for carpal tunnel syndrome. Dr. Hatley found her left shoulder to be tender. He noted that there was no adduction problem and no evidence of rotator-cuff problem. Dr. Hatley made an assessment of bursitis and prescribed Vioxx. Appellant was

to remain off work for one day and avoid repetitive work with the left shoulder, and to follow-up in two weeks.

Appellant was seen for follow-up on September 28 and complained of swelling in her hands and ankles while taking Vioxx. The swelling resolved after she ceased taking the medication. The report indicated that appellant continued to complain of upper left extremity pain, including pain in the upper biceps and left shoulder. Dr. Hatley assessed left shoulder pain with possible biceps tendonitis or possible rotator cuff tear. Appellant was seen again on October 12, 1999, for a follow-up of continuing shoulder pain. Dr. Hatley's report states that x-rays were normal and that physical therapy benefitted appellant. Dr. Hatley released her to work with restrictions not to lift more than five pounds. Appellant returned to Dr. Hatley on October 22, 1999, again complaining of shoulder pain. Dr. Hatley's assessment was left shoulder pain, and he prescribed trigger point injections of Decadron and Lidocaine. She was to return for follow-up in two weeks, but the records indicate that she returned on October 25, 1999, stating that the injections only helped for a few hours and that her left shoulder pain remained. Dr. Hatley's notes indicate a referral to a neurologist for possible brachioplexis injury.

Appellant was also seen by Dr. Owen, an orthopedic surgeon. Dr. Owen's treatment of appellant consisted of carpal tunnel release surgery on both the right and left hands. Dr. Owen's August 18, 1999, office notes reflect that appellant was seen after the left carpal tunnel release surgery and that she expressed concern about returning to work too soon after the surgery and about the neck and shoulder pain. Dr. Owen's notes stated that he explained to her that musculoskeletal pain and spasm, rotator cuff tendonitis or root nerve impingement could give those types of symptoms. He ordered an MRI of appellant's c-spine to look for nerve root impingement. An MRI report prepared by St. Bernard's Regional Medical Center was unremarkable and indicated no herniation or stenosis.

St. Bernard's Rehabilitation Services therapy evaluation of September 28, 1999, as abstracted, includes the following findings:

> Muscle length on the shoulder is severely tight on the left and moderately tight on the right on the major and minor pectoralis with the trapezius on the left being extremely tight and on the right moderately tight. The sternocelidomastoid moderately tight on the left and minimally tight on the right.

The abstract of the therapist's report also contains the following assessment: "[P]atient presents with a tight shoulder and upper thoracic musculature along with mild forward head and elevated shoulder posture and excessive bilateral shoulders, but significant on left. Pain in the upper left arm appears to be secondary to impingement...."

Appellant filed a claim for benefits, alleging that she sustained a gradual onset injury caused by rapid repetitive motion. The administrative law judge found that appellant failed to meet her burden of proof based on the lack of medical evidence substantiating a shoulder injury and the absence of evidence causally relating the shoulder injury to any on-the-job injury. The administrative law judge specifically found:

> The claimant has failed to prove by a preponderance of the credible evidence of record that she developed a gradual shoulder injury, caused by rapid repetitive motion arising out of and in the course of her employment which produced physical bodily harm, supported by objective findings, which was the major cause of disability or the need for medical treatment.

The Commission affirmed and adopted the decision of the administrative law judge.

 The employee has the burden of proving a compensable injury. Ark. Code Ann. § 11-9-102(4)(E) (Supp. 1999). In reviewing decisions from the Workers' Compensation Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms if supported by substantial evidence. *Superior Indus. v. Thomaston*, 72 Ark. App. 7, 32 S.W.3d 52 (2000). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Byars Constr. Co. v. Byars*, 72 Ark. App. 158, 34 S.W.3d 797 (2000). A decision by the Workers' Compensation Commission will not be reversed unless it is determined that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Stiger v. State Line Tire Serv.*, 72 Ark. App. 250, 35 S.W.3d 335 (2000). Where the Commission denies a claim because of the claimant's failure to meet her burden of proof, the substantial-evidence standard of review requires that we affirm if its decision displays a substantial basis for the denial of relief. *Rice v. Georgia-Pacific Corp.*, 72 Ark. App. 148, 35 S.W.3d 328 (2000).

The main thrust of appellant's argument is that the Commission erred in finding that she failed to offer sufficient medical evidence, supported by objective findings, to substantiate a shoulder injury. Arkansas Code Annotated section 11-9-102(4)(D) provides: "A compensable injury must be established by medical evidence supported by 'objective findings' as defined in subdivision (16) of this section." "Objective findings" are "those findings which cannot come under the voluntary control of the patient." Ark. Code Ann. § 11-9-102(16).

Appellant suggests that the Commission has overlooked objective medical findings contained in the rehabilitation report. A September 28, 1999, report prepared by a physical therapist states:

> Muscle length on the shoulder is severely tight on the left and moderately tight on the right on the major and minor pectoralis with the trapezius on the left being extremely tight and on the right moderately tight. The sternocelidomastoid moderately tight on the left and minimally tight on the right.... The clinical assessment is that the patient presents with a tight shoulder and thoracic musculature with mild forward head and elevated shoulder posture and excessive bilateral shoulders, but significant on the left.

Appellant argues that the therapist's findings of muscle tightness are evidence of muscle spasm.

This court has held that muscle spasms constitute objective findings. *Kimbrell v. Arkansas Dep't of Health*, 66 Ark. App. 245, 989 S.W.2d 570 (1999). The definition of muscle spasm approved by this court in *University of Ark. Med. Sciences v. Hart*, 60 Ark. App. 13, 19, 958 S.W.2d 546, 549 (1997) is as follows: "1. An involuntary muscular contraction. . . . 2. Increased muscular tension and shortness which cannot be released voluntarily and which prevent lengthening of the muscles involved; [spasm] is due to pain stimuli to the lower motor neuron." *See also Kimbrell, supra.* Appellant, citing *Continental Express v. Freeman*, 339 Ark. 142, 4 S.W.3d 124 (1999), correctly asserts that a physical therapist can make objective findings. However, appellant has not presented us with convincing argument or authority that "muscle tightness" can be equated with "muscle spasms" in this situation. There is no evidence to suggest that the physical therapist's findings of muscle tightness were actually muscle spasms or that the tightness was involuntary. Certainly, muscle tightness can come under the voluntary control of the

patient. Without evidence of objective medical findings, the Commission had a substantial basis for denying appellant's claim, and we affirm that denial.

Appellant also summarily contends that she established a gradual injury caused by rapid repetitive motion, that the injury arose out of and in the course of her employment, and that the injury was the major cause of her need for treatment. It is not necessary to address these arguments because we agree with the Commission that appellant failed to establish a compensable injury by medical evidence supported by objective findings.

Affirmed.

GRIFFEN and ROAF, JJ., agree.