WAL-MART STORES, INC., and Claims Management, Inc.
*v.* Jerrell WESTBROOK

CA 01-1282                                        72 S.W.3d 889

Court of Appeals of Arkansas
Division IV
Opinion delivered April 17, 2002

*Roberts, Roberts & Russell, P.A.*, by: *Michael Lee Roberts* and *J.R. Wildman*, for appellants.

*Philip M. Wilson*, for appellee.

JOSEPHINE LINKER HART, Judge. Appellants appeal from an order of the Arkansas Workers' Compensation Commission granting appellee temporary total disability benefits and permanent partial disability benefits. Appellants argue that there was not substantial evidence to establish that appellee (i) suffered a right shoulder injury arising out of and in the course of his employment; (ii) was entitled to temporary total disability benefits; and (iii) was entitled to permanent partial disability benefits associated with a 3% permanent impairment rating. We affirm.

On September 3, 1999, appellee, as an employee of appellant Wal-Mart, was restacking pallets of bicycles when a pallet fell, hitting appellee's right shoulder and pinning him against another pallet. Appellee testified that he suffered extreme pain, but after being pulled out from underneath the bicycles, he worked for most of the day. The next day, his shoulder was sore, but he continued to work. He testified that following the accident he notified his supervisor.

Appellee further testified that he continued to work from September 1999, until he was excused from work, according to medical records, on February 7, 2000. Appellee stated that, following the accident, his pain worsened, and he suffered numbness in the mornings and could not lift his arm, and in January 2000, he went to see a company physician about his shoulder. The doctor referred him to another physician, Jay M. Lipke. Dr. Lipke performed surgery on appellee, according to medical records, on

February 14, 2000, and released him to return to work for limited or light duty on April 24, 2000. Appellee acknowledged that, after the September accident, he continued to work and receive a salary from his other job as a minister, even though from February to April the associate pastors performed the "major parts" of his job. He also testified that the only previous injury to his right shoulder was a fall on ice that occurred seventeen or eighteen years earlier, and he had never had any pain or soreness in his right shoulder prior to September 3, 1999.

According to a letter dated January 25, 2000, Dr. Lipke noted that appellee had "a large cyst over the right AC joint and pain with forward elevation and abduction to 90 degrees," with x-rays showing "some degenerative changes of the right AC joint and no other abnormalities." The doctor aspirated the cyst and opined that "his symptoms are related to AC osteoarthritis" and possibly could have "underlying rotator cuff pathology." An MRI was performed on February 3, 2000, which revealed (i) a "[l]arge chronic full thickness tear of the rotator cuff. . . with atrophy of all muscles involving the rotator cuff"; (ii) a "[s]uperior subluxation of the humeral head such that it abuts the undersurface of the acromion"; and (iii) a "[h]ypertropic changes of the AC joint with a[n] associated ganglion cyst superior to the AC joint."

Dr. Lipke, in his notes of February 7, 2000, stated that appellee's "MRI reveals evidence of a large chronic rotator cuff tear with proximal migration of the humeral head," as well as a cyst "that emanates from the AC joint." The doctor opined that appellee "would benefit from surgical intervention" as an attempt to "restore rotator cuff function if at all possible." He also indicated that during the surgery he would "excise the cyst" and "resect the distal clavicle." Surgery was performed on February 14, 2000, and in the postoperative report, Dr. Lipke noted that appellee had a "chronic irreparable rotator cuff tear" and "acromioclavicular osteoarthritis with synovial cyst."

Dr. Lipke subsequently determined that, within a reasonable degree of medical certainty, appellee had "60% [permanent partial impairment] to the upper extremity" with "30% [to the] body as a whole," that the impairment was based on objective data, but

that the work injury was not the "major cause" of appellee's impairment. In a letter to appellee dated April 20, 2000, Dr. Lipke stated, "I don't feel the work-related injury is the major cause of your impairment." He concluded that "[b]ased on the size and chronicity (long standing nature) of the tear, I think this is something that happened prior to the work[-]related injury."

On May 12, 2000, in response to a letter from appellants' attorney, Dr. Lipke stated that "[t]he 30% rating to the body as a whole is based on a 50% impairment to the right upper extremity as a whole."[1] He further concluded that "[t]he 50% impairment to the extremity as a whole is based on loss of strength and motion due to the chronic rotator cuff tear." On June 6, 2000, in response to a letter from appellee's attorney, Dr. Lipke stated that appellee's problems began with the work-related injury and that this injury "aggravated a pre-existing problem with the right shoulder (chronic rotator cuff tear)." Dr. Lipke further stated that, prior to the surgery, he felt that the work-related injury was the entire cause of appellee's shoulder problems. He noted, however, that at the time of the surgery, appellee had a chronic rotator cuff tear that predated the work-related injury. He further stated:

> I feel the work[-]related injury was an aggravating factor, or the straw that broke the camel's back and this has added to his underlying shoulder problem. With this in mind, I would say the work[-]related injury added 5% impairment to his shoulder. In other words, 45% of his impairment would be related to the pre-existing injury and 5% could be assigned to the work[-]related injury.

On August 21, 2000, in response to a letter from appellants' attorney, Dr. Lipke stated that of the 50% impairment, 10% was caused by the work-related injury and 90% by the pre-existing condition.

On appeal to the Commission from the administrative law judge's award of benefits to appellee, the Commission concluded that appellee established by a preponderance of the evidence that

---

[1] We recognize that the 50% impairment figure differs from the 60% impairment figure mentioned above. The discrepancy, however, was not a basis for appeal.

his "right shoulder difficulties were aggravated by, and thus causally related to, his employment." The Commission further concluded that because Dr. Lipke opined that the compensable injury accounted for 10% of appellee's total impairment, "the compensable injury is the major cause of 3% of claimant's total permanent impairment to the body as a whole," and consequently, the Commission awarded permanent partial disability benefits on that basis. The concurring opinion noted that a 5% impairment to the right upper extremity is equivalent to a 3% impairment to the body as a whole. The Commission also awarded temporary total disability benefits from February 7, 2000, when Dr. Lipke excused appellee from work, to April 24, 2000, when the doctor released appellee to return to work. The Commission concluded that appellee's employment as a minister during that time period did not preclude the award of temporary total disability benefits.

On appeal, appellants first argue that the Commission erred in concluding that appellee suffered a right shoulder injury arising out of and in the course of his employment. Primarily, they argue that appellee failed to establish a causal relationship between his employment and his injury.

■ A "compensable injury" is one "arising out of and in the course of employment." Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2002). As the claimant, appellee had the burden of proving a compensable injury by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4)(E)(i) (Repl. 2002). "Thus, in order to prove a compensable injury [the claimant] must prove, among other things, a causal relationship between his employment and the injury." *McMillan v. U.S. Motors*, 59 Ark. App. 85, 90, 953 S.W.2d 907, 909 (1997).

■ ■ Appellee testified that he had no previous problems with his shoulder, that he was in pain following the accident, and that the pain worsened over time. Dr. Lipke attributed part of his impairment to the accident, concluding that the accident was the "straw that broke the camel's back," aggravating his underlying shoulder problems. While appellants point out reasons why the Commission could have discredited appellee's testimony, the Commission found appellee to be credible and concluded that

appellee proved by a preponderance of the evidence that he sustained an injury arising out of and during the course of his employment and that there was a causal relationship between his injury and his employment. "In determining the sufficiency of the evidence to sustain the findings of the Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence." *McMillan*, 59 Ark. App. at 87, 53 S.W.2d at 908. Further, "it is the function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony." *Id.* Because the evidence establishes a substantial basis for the Commission's decision, we affirm.

■ ■ Appellants argue that because appellee worked as a minister and received full pay, he was not totally incapacitated from earning wages, and thus, appellee failed to establish that he was entitled to temporary total disability benefits from February 7, 2000, to April 24, 2000. We note that "[t]emporary total disability is that period within the healing period in which the employee suffers a total incapacity to earn wages." *Arkansas State Hwy. & Transp. Dep't. v. Breshears*, 272 Ark. 244, 247, 613 S.W.2d 392, 393 (1981). "'Disability' means incapacity because of compensable injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the compensable injury. . . ." Ark. Code Ann. § 11-9-102(8) (Repl. 2002). However, while appellee was able to earn wages as a minister during that period, as we explained in *Stevens v. Mountain Home Sch. Dist.*, 41 Ark. App. 201, 203-04, 850 S.W.2d 335, 336 (1993), for the purpose of defining disability, "'any other employment' means any other employment in lieu of the one in which the employee was injured." Because appellee was working both jobs when he was injured, his job as a minister was not "any other employment" undertaken in place of his employment at Wal-Mart. Accordingly, we affirm the Commission's award of temporary total disability·benefits.

Appellants further contend that the Commission erred in awarding appellant permanent partial disability benefits because Dr. Lipke opined that the compensable injury was not the major

cause of appellee's permanent disability or need for treatment. The relevant statute provides as follows:

>     (ii)(a)  Permanent benefits shall be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment.
>
>     (b)  If any compensable injury combines with a preexisting disease or condition or the natural process of aging to cause or prolong disability or a need for treatment, permanent benefits shall be payable for the resultant condition only if the compensable injury is the major cause of the permanent disability or need for treatment.

Ark. Code Ann. § 11-9-102(4)(F) (Repl. 2002). "'Major cause' means more than fifty percent (50%) of the cause." Ark. Code Ann. § 11-9-102(14)(A) (Repl. 2002). "A finding of major cause shall be established according to the preponderance of the evidence. . . ." Ark. Code Ann. § 11-9-102(14)(B) (Repl. 2002).

■  We note, however, that the Commission did not award permanent partial disability benefits based on Dr. Lipke's conclusion that appellee had a 30% impairment to the body as a whole. Rather, consistently with Dr. Lipke's findings, the Commission concluded that the compensable injury was the major cause of 3% of appellee's permanent impairment to the body as a whole, and consequently, the Commission awarded permanent partial disability benefits on that basis. Dr. Lipke's exacting testimony provided the Commission with a preponderance of evidence from which to determine that the compensable injury was the major cause of appellee's 3% impairment. *See Second Injury Fund v. Stephens*, 62 Ark. App. 255, 970 S.W.2d 331 (1998)(holding that the "major cause" requirement was satisfied by evidence that an injury necessitated performance of surgery and that this surgery, at the site of a previous one, was the reason for the additional 2% impairment rating). We affirm the Commission's award of permanent partial disability benefits.

Affirmed.

ROBBINS and BAKER, JJ., agree.