Leon B. CRAWFORD v.
SINGLE SOURCE TRANSPORTATION;
Fidelity & Casualty Insurance Company

CA 03-1325                                                189 S.W.3d 507

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered June 30, 2004

*Joseph P. Graham, P.A.*, by: *Joseph P. Graham*, for appellant.

*Huckabay, Munson, Rowlett & Moore, P.A.*, by: *Melissa Ross*, for appellees.

TERRY CRABTREE, Judge. The Workers' Compensation Commission reversed the decision of an Administrative Law Judge and found that the appellant, Leon Crawford, suffered a noncompensable idiopathic injury to his knee on February 13, 2002. On appeal, appellant claims that substantial evidence does not support the Commission's denial of benefits. We reverse and remand.

In reviewing decisions from the Workers' Compensation Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Carman v. Haworth, Inc.*, 74 Ark. App. 55, 45 S.W.3d 408 (2001). Substantial evidence exists if reasonable minds could reach the same conclusion. *Daniels v. Arkansas Dep't Human Servs.*, 77 Ark. App. 99, 72 S.W.3d 128 (2002); *Lee v. Dr. Pepper Bottling Co.*, 74 Ark. App. 43, 47 S.W.3d 263 (2001). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999). We readily acknowledge that it is the function of the Commission to determine the credibility of witnesses and the weight to be given their testimony. *Wal-Mart Stores, Inc. v. Stotts*, 74 Ark. App. 428, 58 S.W.3d 853 (2001).

The appellee, Single Source Transportation, began employing appellant as a cement-truck driver on March 10, 1988. On February 13, 2002, appellant drove a load of cement for appellee to Kickapoo, Louisiana. Upon arriving at the destination, appellant stepped out of his truck, down two steep steps, and onto an oil field. As his foot reached the ground, appellant's knee "gave" or buckled. As a result, appellant fell to the ground and began to feel pain in his knee. Appellant testified that "I opened the door, and there are two steps and then the ground. I grabbed hold of the steering wheel, and I stepped out on the last step and put my left

foot on the ground, and it just gave way with me." At the time of his injury, appellant was almost sixty years old.

After falling, appellant got up and proceeded to engage the truck's air lines to release the cement. In order to accomplish this, appellant held onto the truck while maneuvering the air lines and hose. Appellant finished the process and returned to appellee's plant. Appellant's knee swelled and continued to hurt on his return trip. Ultimately, appellant drove to his home hoping that his knee would recover. The next day, appellant went to work, but at the end of the day with his knee still hurting, appellant notified appellee of his injury. Appellant went home, and appellee sent a company car to transport him to Southern Clinic for medical attention. After his examination at the clinic, appellant was taken off work for three weeks and referred to Dr. Frank Hamlin, an orthopedic physician in Texarkana.

Appellant presented to Dr. Hamlin one week after the fall, and Dr. Hamlin noted in his medical report:

> I first saw [appellant] on 2-20-02 with chief complaint of pain and swelling of his left knee. He had an episode getting out of his truck on 2-13-02, at which time his knee buckled on him. As it did, he did have a twisting, flexion injury to his knee. He said immediately after that he could hardly walk. His knee became swollen almost immediately and it caused him to limp severely. . . He said previous to that, he had been having some soreness over the medial side of his knee when he would repeatedly use his clutch in his truck. He evidently drives a large 18 wheeler. He said he has never had any acute episodes like this before. When I saw him he said his knee was not nearly as swollen as it was initially. When I saw him, he said he was placed on some Mobic by his family physician. We x-rayed him the first day I saw him and he did have some degenerative changes with some medial joint space narrowing. Other than that, the x-rays were not remarkable. . . *MRI was ordered and did show a tear of the posterior horn of the medial meniscus and possible medical collateral ligament strain.*

(Emphasis added.)

On March 14, 2002, Dr. Hamlin admitted appellant to St. Michael Health Care Center for orthroscopic knee surgery and a partial medial meniscectomy. The operative report reflects a preoperative diagnosis of internal derangement of the left knee and possible osteoarthritis of the left knee. The postoperative diagnosis

reported a tear of the posterior horn of the medial meniscus of the left knee and osteoarthritis of the femoral intracondylar notch and of the medial femoral condyle. Following the orthroscopic procedure, appellant underwent injections in his left knee. Dr. Hamlin released appellant to work on May 4, 2002.

At the hearing below, appellant sought temporary-total disability benefits in addition to medical benefits for his specific-incident knee injury. We note that appellant did not claim benefits caused by a gradual-onset injury from repeated use of the clutch on appellee's cement truck. After hearing testimony from appellant and one of appellee's employees, the ALJ found that appellant suffered an unexplained compensable fall and awarded him temporary-total disability benefits as well as medical benefits. The Commission reversed the ALJ and found that appellant suffered a noncompensable idiopathic fall. We agree with appellant's argument that his injury was neither idiopathic or unexplained but rather that he sustained a specific-incident injury.

As the claimant, appellant had the burden of proving his compensable injury by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4)(E)(I) (Repl. 2002). A compensable injury is one arising out of and in the course of employment. Ark. Code Ann. § 11-9-102(4)(A)(I) (Repl. 2002). Arkansas Code Annotated section 11-9-102(4)(D) provides that a compensable injury must be established by medical evidence supported by objective findings. Objective findings are those findings which cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16); *Carman v. Haworth, Inc.*, 74 Ark. App. 55, 45 S.W.3d 408 (2001). In order to prove a compensable injury the claimant must prove, among other things, a causal relationship between his employment and the injury. *Wal-Mart Stores, Inc. v. Westbrook*, 77 Ark. App. 167, 72 S.W.3d 889 (2002).

The Commission found that appellant suffered a non-compensable idiopathic injury. We hold that this finding is not supported by substantial evidence. An idiopathic injury is one whose cause is personal in nature, or peculiar to the individual. *See Kuhn v. Majestic Hotel*, 324 Ark. 21, 918 S.W.2d 158 (1996); *Little Rock Convention & Visitors Bur. v. Pack*, 60 Ark. App. 82, 959 S.W.2d 415 (1997); *Moore v. Darling Store Fixtures*, 22 Ark. App. 21, 732 S.W.2d 496 (1987). Injuries sustained due to an unexplained cause are different from injuries where the cause is idiopathic. *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d

212 (1998). Where a claimant suffers an unexplained injury at work, it is generally compensable. *Little Rock Convention & Visitors Bur., supra.* Because an idiopathic injury is not related to employment, it is generally not compensable unless conditions related to the employment contribute to the risk. *Id.* Employment conditions can contribute to the risk or aggravate the injury by, for example, placing the employee in a position which increases the dangerous effect of a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle. *Id.*

Here, we believe that appellant's employment conditions contributed to his injury and thus cannot consider it to be a noncompensable idiopathic injury. In the course of his employment, appellant drove appellee's cement truck to Louisiana. In order for appellant to enter or exit the driver's compartment of the truck, he had to negotiate two steep steps. Vicky Dangerfield, who is employed by appellee in its accounting department, testified that the "bottom step is a pretty good distance off the ground. It is very hard for me to get into the truck. I went on one trip, and I required assistance." At the time of the incident, appellant attempted to exit the truck by descending the steps to an oil field. As appellant made his final stride to the ground below, his knee "gave," and as a result, he twisted it and suffered an injury.

We cannot say that the injury appellant suffered was simply personal in nature as it was caused while he attempted to exit his employer's vehicle from an elevated position. As a result, appellant's employment conditions contributed to his accident. Furthermore, we cannot say that appellant's injury was unexplainable as his testimony fully informs us as to the circumstances surrounding his fall.

We reverse the decision of the Commission and remand for it to determine the extent of the injury suffered by appellant as a result of his fall, any disability resulting therefrom, and the amount of compensation to which he is entitled.

Reversed and remanded.

HART, GRIFFEN, and ROAF, JJ., agree.

VAUGHT, J., concurs.

BIRD, J., dissents.

LARRY D. VAUGHT, Judge, concurring. I concur in the decision to reverse and remand this case, but write sepa-

rately because I believe that the Commission correctly found that the injury was idiopathic in nature. However, I believe the Commission erroneously concluded that appellant's work did not contribute to a risk of fall or increase the effect of the fall.

The injury was not unexplained because the appellant's testimony and the medical evidence indicated that he suffered from osteoarthritis and the tear of the posterior horn of the medial meniscus was a "large degenerative tear." Therefore, there is substantial evidence that the injury was personal to the appellant and idiopathic. However, in *ERC Contractor Yard & Sales v. Robertson,* 335 Ark. 63, 977 S.W.2d 212 (1998), the supreme court held that a claimant who suffered an idiopathic fall was nonetheless entitled to compensation where the employment contributed to the injury by placing the employee in a position that increased the dangerous effect of the fall. In ERC the claimant was on scaffolding twelve to fifteen feet above the ground; in the case at bar the appellant was descending from a truck step that was described as "pretty high" and required a female employee to have assistance when getting out of the vehicle.

While the increase in dangerous effect is not as pronounced in this case as in ERC, the difference is only of degree and not of substance. I would hold that the Commission's conclusion that there is no credible evidence that the appellant's work either contributed to the risk of fall or increased the effect of the fall is not supported by substantial evidence.

SAM BIRD, Judge, dissenting. The majority recites the well-settled standards of review for workers' compensation cases, but its decision in the present case ignores those standards. I do not see how we can remand this case without simply ignoring the Commission's credibility determinations and holding that no reasonable mind could reach the Commission's conclusions.

When appellant reached his destination at a Louisiana oil field pad, he opened the door of the truck, he took two steps down, he put his left foot on the ground, and his knee gave way. He testified that the last step was "fairly high" off the ground and that the ground upon which he was stepping was very unlevel. He said that he did not know if he stepped out onto anything on the ground, that he did not hit his knee on anything or step on anything, did not feel a pop, and that he did not twist his knee. He acknowledged that he filled out a report (Form AR-N) stating that

when he climbed down and his foot touched the ground, his knee gave in, causing pain and swelling.

Appellant testified that before February 13 he had been having trouble with his knee; he had been using over-the-counter medicines for pain and liniment when his knee swelled. He said that he had been having trouble with the clutch on his truck that he had been driving for five or six years, and that the clutch kept his knee irritated.

Vicky Daingerfield, an employee for Single Source who handled the company's payroll, billing, and workers' compensation claims, testified that when Crawford reported his injury, he said that he climbed out of his truck and that his knee gave out when his left foot hit the ground. Daingerfield said that Crawford's report did not mention that his knee hit anything, did not mention that he tripped, and did not mention that he twisted or popped his knee.

Daingerfield testified that she was familiar with the looks of the cement trucks and that their bottom step is a pretty good distance off the ground. She said that she went on one trip and that it was very hard for her to get into the truck, and that she required assistance.

Appellant apparently abandons any assertion of a relationship between his injury and the difficult clutch in an attempt to bring his claim within *ERC Contr. Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998). That leaves only the question of whether appellant's injury arose out of his employment or whether the injury was idiopathic. In reversing the ALJ's finding that the claim was compensable, the Commission found that appellant's injury was idiopathic, noting:

(1) That the evidence was undisputed that appellant's knee simply gave way when he stepped onto the ground;

(2) That there was inconsistency between appellant's "somewhat vague" hearing testimony about an uneven grade where he stepped out on the ground, and the lack of a contemporaneous report that any condition on the ground caused his knee to give way.

(3) That appellant testified that he had experienced pain and swelling in the knee prior to the incident in question;

(4) That medical reports indicated that appellant had significant osteoarthritis in his knee;

(5) That Dr. Hamlin's surgical report indicated that the tear of the posterior horn of the medial meniscus was a "large *degenerative* tear";

(6) That there was a "lack of any credible evidence indicating that the claimant's job duties caused or contributed to his fall when his knee gave way."

The Commission concluded:

(1) Absent any persuasive evidence of some affirmative employment contribution to offset the prima facie showing of a personal origin in the claimant's knee giving way, the preponderance of the evidence establishes that the claimant experienced an idiopathic fall, and not an unexplained or work-related fall.

(2) Because of insufficient credible evidence to establish that appellant's work either contributed to a risk of fall or increased the effect of the fall, the record fails to establish that appellee is responsible for appellant's idiopathic fall.

Viewing the evidence in the light most favorable to the Commission, I do not see how we can say that there is no substantial evidence to support the Commission's conclusion. The Commission found appellant's testimony not to be credible; therefore, we are required to accept the Commission's conclusion that claimant's injury had nothing to do with the condition of the ground where he stepped out of his truck. That leaves only the question of whether appellant experienced an "unexplained" or an idiopathic injury. The Commission found that the explanation for the injury was that appellant had a pre-existing problem with his knee, and that his knee just gave way when he stepped on the ground. Therefore, I believe that the Commission's conclusion displays a substantial basis for the denial of this claim.

Unlike ERC, *supra*, where the claimant fell some twelve or fifteen feet, here there is no evidence of how high the last step on appellant's truck was from the ground. We only know that the steps on Single Sources' cement trucks are "a pretty good distance" from the ground and are high enough that a female employee once needed assistance in getting into one of them. We do not know the meaning of "a pretty good distance" to the female employee, and we do not know whether the truck she needed assistance getting into was the truck from which Garrett was exiting when his knee gave way. Unless we are going to say

that the unknown height of the last step on all Single Source's cement trucks is unreasonably dangerous as a matter of law, I do not see how we can reverse the Commission in this case.

Furthermore, the question before us is not whether the evidence would have supported findings contrary to those of the Workers' Compensation Commission; rather, the decision of the Commission must be affirmed if reasonable minds might have reached the same conclusion. *Caffey v. Sanyo Mf'g Corp.*, 85 Ark. App. 342, 154 S.W.3d 274 (2004). The majority, stating its own belief that employment conditions contributed to appellant's injury, points to no evidence supporting its narration that appellant had to negotiate two "steep" steps to descend "to an oil field." Nor does evidence recited by the majority support its assertion that appellant's testimony "fully informs us as to the circumstances surrounding his fall." In my view, the majority in this case, acting as fact finder and presenting a version of events unsupported by the evidence, ignores our role as the reviewing court.

I respectfully dissent.