
SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-735

| | |
|---|---|
| LOWE'S HOME CENTERS, INC., AND SEDGWICK CLAIMS MANAGEMENT SERVICES   APPELLANTS/CROSS-APPELLEES<br><br>V.<br><br><br>SHAWN R. POPE<br>  APPELLEE/CROSS-APPELLANT | Opinion Delivered: FEBRUARY 10, 2016<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G304898]<br><br><br><br>AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

## KENNETH S. HIXSON, Judge

Appellee Shawn Pope worked as an assistant manager for appellant Lowe's Home Centers, and she filed a workers' compensation claim alleging compensability for an accidental neck injury caused by a specific incident as well as a gradual-onset lower-back injury. The Workers' Compensation Commission denied compensability for a neck injury, but found that Shawn proved that she sustained a compensable gradual-onset back injury. The Commission awarded medical benefits associated with the compensable back injury.

Lowe's now appeals, arguing that substantial evidence does not support the Commission's finding that Shawn sustained a compensable gradual-onset back injury. Shawn has filed a cross-appeal, arguing that substantial evidence does not support the Commission's finding that she failed to prove a compensable neck injury. We affirm on direct appeal, and we affirm on cross-appeal.

 

Arkansas Code Annotated section 11-9-102(4)(A) (Repl. 2012) defines "compensable injury," and provides in relevant part:

> (4)(A) "Compensable injury" means:
>   (i) An accidental injury causing internal or external physical harm to the body or accidental injury to prosthetic appliances, including eyeglasses, contact lenses, or hearing aids, arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place or occurrence;
>   (ii) An injury causing internal or external physical harm to the body and arising out of an in the course of employment if it is not caused by a specific incident or is not identifiable by time and place of occurrence, if the injury is:
>
>       . . . .
>
>   (b) A back or neck injury which is not caused by a specific incident or which is not identifiable by time and place of occurrence[.]

A compensable injury must be established by medical evidence supported by objective findings, which are findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(4)(D) and (16)(a)(i). Pursuant to subsection (4)(E) of this statute, the employee has the burden of proving compensability by a preponderance of the evidence. To prove a compensable injury not caused by a specific incident under subsection (4)(A)(ii), there is an additional requirement that the alleged compensable injury is the major cause of the disability or need for treatment. Ark. Code Ann. § 11-9-102(4)(E)(ii).

In reviewing a decision of the Commission, we view the evidence in the light most favorable to the Commission's findings and affirm if those findings are supported by substantial evidence. *Wal-Mart Stores, Inc. v. Brown*, 82 Ark. App. 600, 120 S.W.3d 153 (2003). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* When the Commission denies benefits because the

claimant failed to meet her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000). It is the Commission's function to weigh the medical evidence and assess the credibility and weight to be afforded any testimony. *Wesner's Grill v. Carpenter*, 2011 Ark. App. 378.

Shawn testified that she began working at Lowe's in 2008. She stated that her job as an assistant manager required her to work throughout the entire building. Her duties included lifting grills, trash composters, toilets, and bathtubs, and she frequently loaded soil into the backs of trucks. According to Shawn, the heaviest lifting she performed by herself was loading a 200-pound grill, which she lifted using a rack and a cart. Shawn worked approximately sixty hours per week. She stated that, for the first few years she worked at Lowe's, she had no significant neck or back problems and had no problem discharging her duties. Shawn also denied having any back problems prior to her employment with Lowe's.

Shawn testified that her problems began in 2011, when she was lifting a trash composter weighing fifty to seventy pounds by herself.[1] Shawn stated that, as she was pulling the composter off the shelf, she lost her footing, went backward, and twisted. Shawn stated that after the accident she felt mostly neck pain, but also experienced minor back pain. She testified that she reported an injury to the store manager on the following day, but did not then file a workers' compensation claim for fear of retaliation and compromising

---

[1] Shawn stated that she was unsure about the exact date, but she thought the injury had occurred on August 23, 2011. The subsequent doctor's report contains a stamp mark indicating a date of April 25, 2011, but it appears by context that the date of the report may have actually been August 25, 2011.

her career. She also stated that she hoped she would get better and did not want to quit working.

Shawn testified that she visited her family physician, Dr. Frances Radkey, a couple of days after the accident involving the trash composter. Dr. Radkey noted in her doctor's report that Shawn reported neck pain arising from lifting a composter off a shelf. Dr. Radkey diagnosed neck strain, for which she prescribed medication and physical therapy. In a subsequent visit to Dr. Radkey on February 16, 2012, Shawn complained of neck stiffness and reported that she had been lifting up to sixty pounds at work and working more hours. Shawn testified that her neck and back pain gradually worsened, and on April 6, 2012, Dr. Radkey ordered MRIs of her cervical spine and lumbar spine.

The MRIs were performed on April 16, 2012. The cervical-spine MRI detected early degenerative changes most pronounced at the C5−C6 and C6−C7 levels, but detected no herniations or other significant problems. The lumbar-spine MRI detected a herniated nucleus pulposus at the L5−S1 level, compressing the left nerve root, as well as a bulging disc at the L4−L5 level that flattens the thecal sac. After the MRIs, Dr. Radkey referred Shawn to Dr. Ira Chatman for chronic pain symptoms.

Dr. Chatman's initial report dated April 25, 2012, stated:

> The patient complains of pain in lower back and in neck and shoulders. The patient has been experiencing this pain for a year. She reports onset of pain gradually over time without significant initiating factor. The patient describes her pain as constant with intermittent flare ups. The pain is aching, stabbing, sharp, deep, cramping and pressure like. The pain radiates to bilateral upper extremities and bilateral lower extremity.

Shawn continued to treat with Dr. Chatman for management of her back pain, and he diagnosed lumbar radiculitus and prescribed pain medication, steroid injections, physical therapy, and medial branch blocks.

According to Shawn's testimony, her lifting at work gradually aggravated and worsened her problems, and she quit working at Lowe's in May 2013 and began receiving short-term disability benefits. She stated that she has not worked since her separation from Lowe's, and is currently receiving long-term disability benefits.

After her employment terminated, Shawn was referred to a neurosurgeon, Dr. Mark Crabtree, for evaluation. On July 12, 2013, Dr. Crabtree reported that Shawn's neck pain began with an on-the-job injury, that she developed lower-back pain approximately a year ago, and that her symptoms had worsened with time. Dr. Crabtree reported that Shawn complained of constant aching in her lower back, as well as muscle spasms in her lower back, and that working, sitting, and standing were aggravating factors. However, Dr. Crabtree stated that Shawn was not a surgical candidate. Shawn returned to Dr. Chatman who reported on August 30, 2013, that Shawn continued to complain of lower-back and neck pain, that she had been able to be off work recently and avoid heavy lifting, and that her return to employment with heavy physical activity and lifting was unlikely to be tolerated.

In the Commission's decision, it specifically credited Shawn's testimony that she had sustained a specific incident occurring in the course of her employment in August 2011 while lifting a trash composter. However, the Commission denied compensability for an accidental neck injury based on its finding that there were no objective medical findings

that Shawn sustained a trauma injury to her neck. The Commission found that Shawn proved a compensable gradual-onset injury to her back supported by objective findings, which consisted of a herniation at L5−S1 and a bulging disc at L4−L5. Crediting Shawn's testimony that her back problems gradually progressed due to her strenuous activities at Lowe's, and noting that Shawn had not experienced back problems prior to her working at Lowe's, the Commission concluded that Shawn's work-related back injury was the major cause of her need for treatment.

Lowe's now appeals from the Commission's decision, arguing that substantial evidence does not support the Commission's finding that Shawn suffered a compensable gradual-onset back injury. Lowe's first contends that Shawn did not establish that a work-related injury was the major cause of her need for treatment. Lowe's asserts that there was a failure of proof on the "major cause" requirement because Shawn did not ever report to a treating physician that she had injured her back while in the scope of her employment, the lumbar-spine MRI revealed degenerative spinal issues, and during the course of her employment at Lowe's Shawn had undergone surgery to a load-bearing extremity (right knee) unrelated to her employment. Lowe's further contends that inconsistencies in Shawn's testimony required the Commission to find that Shawn failed to prove a compensable injury. In this regard, Lowe's asserts that Shawn could not even identify the year in which her back symptoms had first developed.

We hold that substantial evidence supports the Commission's finding that Shawn sustained a compensable gradual-onset injury to her low back. In *Cooper Tire & Rubber Co. v. Strickland*, 2011 Ark. App. 585, we stated that medical evidence on causation is not

required in every case, and that causation often comes down to a decision on the credibility of the claimant. As the Commission's opinion in this case points out, there was no evidence that Shawn had experienced any back problems prior to her employment at Lowe's, and Shawn testified that her back problems started while working there. Her duties at Lowe's involved heavy lifting and long work hours, and she testified that minor pain in her back began after lifting a trash composter in 2011, but that she did not initially report her back pain to Dr. Radkey because she thought it was just sore and would go away. However, according to Shawn, her lower-back problems worsened gradually over time, and there was documentation that the pain was exacerbated by working, twisting, turning, and bending. The April 16, 2012 lumbar-spine MRI detected a herniation and a bulging disc in Shawn's lower back, and shortly thereafter Dr. Chatman reported that Shawn had been experiencing lower-back pain for a year, which was described as stabbing and radiating into her extremities. Shawn's back pain persisted after that, resulting in multiple treatment regimens and ultimately requiring her to quit work in May 2013. From this evidence, reasonable minds could conclude that Shawn sustained a compensable gradual-onset back injury, arising out of her employment, which was the major cause of her need for treatment.

Although Lowe's contends that Shawn gave inconsistent testimony as to when her back symptoms began, our review of the record reveals otherwise. Shawn maintained that her back pain began when she lifted the trash composter in 2011, and gradually worsened after that. Lowe's asserts that at another point in her testimony Shawn identified her back problems as beginning after she started seeing Dr. Chatman in 2013. However, her testimony was that:

> My lower back problems developed gradually. I was sore when I injured my neck, and it gradually got worse. I also began to have numbness in my legs. . . . I cannot recall the exact date it started, but would have to say it began in 2013.

Shawn did not testify that her back problems began in 2013 as suggested by Lowe's, but instead stated that she thought that was when the numbness began. On the record before this court, we conclude that there was substantial evidence to support an award for a compensable back injury.

In her cross-appeal, Shawn argues that the Commission's finding that she failed to prove a compensable neck injury was not supported by substantial evidence. In support of her argument, Shawn states that "the spine is one interconnected portion of the central nervous system," and urges that, given the objective findings of injury to the lumbar spine, "common sense should prevail" and we should reverse the Commission's finding that she failed to prove a compensable neck injury.

We do not agree with Shawn's argument on cross-appeal. The Commission credited Shawn's testimony that a specific lifting incident occurred at work, but denied compensability for a neck injury due to a lack of objective findings to support such an injury. The cervical MRI detected only early degenerative neck changes, and contained no findings supporting a neck injury attributable to a traumatic event at work. As found by the Commission, there was a failure of proof of objective medical findings to support a compensable neck injury, and we therefore hold that the Commission's opinion displays a substantial basis for the denial of that relief.

Affirmed on direct appeal; affirmed on cross-appeal.

HARRISON and VAUGHT, JJ., agree.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Randy P. Murphy* and *Seth A. White*, for appellants.

*Frederick S. "Rick" Spencer*, for appellee.