

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-15-1038

| | |
|---|---|
| HERSCHEL SKINNER<br><div align="right">APPELLANT</div> | **Opinion Delivered** June 1, 2016 |
| V. | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| TANGO TRANSPORT, INC., YORK RISK SERVICE GROUP, and DEATH & PERMANENT TOTAL DISABILITY TRUST FUND<br><div align="right">APPELLEES</div> | [NO. G006774]<br><br>AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant Herschel Skinner appeals from a September 14, 2015 opinion by the Arkansas Workers' Compensation Commission (Commission) affirming and adopting the findings of fact and conclusions of law made by the Administrative Law Judge (ALJ) in favor of appellees Tango Transport, Inc. (Tango Truck), and York Risk Service Group, Inc. (collectively Respondents No. 1), and the Death and Permanent Total Disability Trust Fund (Respondent No. 2). On appeal, appellant contends that (1) the Commission erred in holding that he was not entitled to simultaneous payments of permanent partial-disability (PPD) benefits in a lump sum and accrued permanent total-disability (PTD) benefits under the doctrines of law of the case and res judicata; (2) Respondents No. 1's payment of the PPD scheduled injury award of $23,675.63 was not an advance payment of compensation pursuant to Arkansas Code Annotated section 11-9-807(a) (Repl. 2012) that entitles Respondents No.

1 to a credit toward their maximum obligation for PTD benefits; (3) appellant is entitled to receive PTD benefits at the rate of $455.00 per week from the end of his healing period on June 10, 2011, for the rest of his life without any lapse in payments under the doctrines of law of the case and res judicata; and (4) Respondents No. 1 owe interest on the balance of the disability benefits. We affirm.

Some background information is essential to understanding appellant's points on appeal. Appellant injured his right foot while working at Tango Truck on June 10, 2010, and it was determined that his healing period ended June 10, 2011. At that time, Respondents No. 1 controverted appellant's entitlement to temporary total-disability (TTD) benefits for the period from June 16, 2010, through July 13, 2010, and from April 6, 2011, through June 10, 2011; permanent physical impairment in excess of 6.25% to the right foot; and PTD benefits. Appellant had argued that he was not only entitled to an anatomical impairment of 53% rather than 6.25% as alleged by Respondents No. 1, but that he was, in fact, totally disabled and entitled to PTD benefits because he was unable to return to work. A hearing before the ALJ regarding these issues was held on May 25, 2012.

The ALJ specifically made the following findings in his August 23, 2012 written opinion:

### FINDINGS

1. The Arkansas Workers' Compensation Commission has jurisdiction of this claim.

2. The employment relationship existed on June 10, 2010, when the claimant sustained a compensable injury to his right foot, during which time he earned an average weekly wage of $681.82, generating weekly compensation benefit rated of



$455.00/$341, for total/permanent partial disability.

3.      The claimant was temporarily totally disabled for the periods commencing June 16, 2010 through July 13, 2010, and April 6, 2011 and continuing through June 10, 2011.

4.      The claimant reached the end of his healing period on June 10, 2011, with a permanent physical impairment in the amount of 53% to the right foot, as a result of the June 10, 2010, compensable injury.

5.      When the claimant's age, education, work history, permanent restrictions and limitations, coupled with other matters reasonably expected to affect his future earning capacity are considered, the evidence preponderates that the claimant has been rendered permanently and totally disabled within the purview of the Arkansas Workers' Compensation Act.

6.      Respondents are entitled to credit for the overpayment of indemnity benefits to and on behalf of the claimant at an erroneous rate, and are not estopped to claim same pursuant to Ark. Code Ann. § 11-9-713.

7.      Respondents #1 shall pay all reasonable hospital and medical expenses arising out of the claimant's compensable injury of June 10, 2010.

8.      Respondents #1 have controverted the claimant's entitlement to temporary total disability benefits for the period June 16, 2010 through July 13, 2010, and April 6, 2011 through June 10, 2011; permanent physical impairment in excess of 6.25% to the right foot; and permanent total disability benefits.
. . . .

### AWARD

Respondents #1 are herein ordered and directed to pay to the claimant temporary total disability benefits as the weekly compensation benefit rate of $455.00, for the period commencing June 16, 2010 through July 13, 2010, and April 6, 2011 continuing through June 10, 2011, as a result of the June 10, 2010, compensable right foot injury. Said sums accrued shall be paid in lump without discount. Respondents #1 may claim credit for overpayments previously tendered to the claimant.

Respondents #1 are further ordered and directed to pay to the claimant permanent partial disability benefits at the weekly compensation benefit rate of $341.00, to correspond to the 53% impairment to the right foot incurred by the claimant as a result of the June 10, 2010, compensable right foot injury. Said sums

SLIP OPINION

shall be paid in lump without discount. Respondents #1 may claim credit for sums heretofore paid toward the afore anatomical impairment.

Respondents #1 are further ordered and directed to [pay] permanent total disability benefits to the claimant at the weekly compensation benefit rate of $455.00, as a result of the claimant's permanent total disability from the June 10, 2010, compensable injury.

Respondents #1 shall pay all reasonably necessary and related medical, hospital, nursing and other apparatus expenses growing out of and in connection with the treatment of the claimant's June 10, 2010, compensable injury, to include medical related travel.

Maximum attorney fees are herein awarded to the claimant's attorney on the controverted indemnity benefits herein awarded, pursuant to Ark. Code Ann. § 11-9-715.

This award shall bear interest at the legal rate pursuant to Ark. Code Ann. § 11-9-809, until paid.

Subsequently, on March 15, 2013, the Commission in a 2–1 majority opinion affirmed and adopted the ALJ's opinion as its own. Furthermore, this court affirmed the Commission by memorandum opinion after Respondents No. 1 appealed, and our supreme court denied the petition for review on February 6, 2014. *Tango Truck Services, Inc. v. Skinner*, 2013 Ark. App. 682.

Afterwards, a series of correspondence and disagreements between the parties ensued regarding how and when payments should be made, and a second hearing before the same ALJ was held on September 26, 2014. Appellant acknowledged in his prehearing questionnaire that Respondents No. 1 had paid all accrued-disability benefits and attorney's fees awarded through February 20, 2014, and was paying him PTD benefits of $455 weekly, less his one-half share of attorney's fees, and attorney's fees on those sums in installments. In

relevant part, appellant contended at the hearing and in his posthearing briefs that Respondents No. 1 were obligated to make dual payments of PPD and PTD and that they were not entitled to any credit for the PPD payments toward their maximum obligation of $182,650 for PTD benefits pursuant to Arkansas Code Annotated section 11-9-502. Appellant further contended that he was entitled to receive PTD payments for the remainder of his life without any lapse as Respondent No. 2 had suggested. Additionally, he argued that he had failed to receive all the attorney's fees, interest, and costs that he had been previously awarded.

The ALJ specifically made the following findings in his December 22, 2014 opinion:

### FINDINGS

1. The Arkansas Workers' Compensation Commission has jurisdiction of this claim.

. . . .

5. The total obligation of Respondents #1 for the payment of permanent total disability indemnity benefits for the claimant's June 10, 2010, compensable injury is $182,650.00, which is inclusive of indemnity benefits paid to correspond to the 53% anatomical impairment, pursuant to Ark. Code Ann. §§ 11-9-501(b) and 519(a). The claimant is not entitled to the simultaneous payment of permanent partial disability and permanent total disability benefits.

6. Respondents #1 are entitled to credit for the payment of indemnity benefits to the claimant that corresponded to the payment of the 53% anatomical impairment to the right foot against its total obligation of $182,650.00.

7. As of the September 26, 2014, hearing date in this claim, respondents #1 have made advance payments of indemnity benefits to the claimant in the amount of $23,815.24, as well as advance payment of claimant's attorney fee in the amount of $7,145.55.

8.     With the end of the healing period in the present claim being June 10, 2011, the start date for the commencement of payment of indemnity benefits by respondent #2, the Trust Fund, may not be accelerated if respondents #1 conclude the payment of their maximum obligation early.

9.     The claimant has failed to sustain his burden of proof that respondents #1 failed or refused to reimburse him for co-payments for doctor visits in connection with his June 10, 2010, compensable injury.

CONCLUSION

In the present claim, the claimant contends that the respondents #1 are not entitled to credit for the payment of indemnity benefits to correspond with the anatomical impairment against the total obligation for the payment of permanent total disability benefits, pursuant to prior rulings.  Specifically, the claimant noted that pursuant to the prior rulings, respondents #1 were directed to pay the accrued benefits in lump without discount.  The claimant further contends that *res judicata* bar[s] respondent #2 from raising the issues of dual payments for the same period or credit for the rating.  The claimant further contends that respondents #1 failed to pay interest on previously awarded attorney fee and to reimburse the claimant for co-pays, in accordance with the prior rulings.
. . . .

The payment of indemnity benefits relative to permanent total disability is governed by Ark. Code Ann. §§ 11-9-501(b) and 519(a). . . . Respondents #1 were directed to pay all accrued indemnity benefit in lump.  Respondents #1 were also allowed credit for sums heretofore paid toward the afore obligation.  The total payment obligation of respondent #1 for a permanent total disability award was $182,650.00.  Pursuant to the August 23, 2012, award, respondents #1 paid the accrued benefits for the 53% permanent physical impairment to the right foot in lump.  Respondents #1 were not obligated to make dual payment of permanent partial disability and permanent total disability without benefit of credit.  *Death & Permanent Total Disability Trust Fund v. Legacy Insurance Services*, 95 Ark. App. 189, 235 S.W.3d 544 (2006).

Since the maximum obligation of permanent total disability payment is obtainable and identifiable, dual payments will result in an advance payment of compensation to the claimant.  Should a claimant be allowed to collect the payment of anatomical indemnity benefit, or permanent partial disability, in addition to and over and above the permanent total disability, the same would result in a violation of maximum payment of permanent total disability provision of Ark. Code Ann. §§ 11-9-501(b) and 519(a).

The evidence in the record reflects that respondents #1 paid the award ordered in the August 23, 2013, ruling. Additionally, the evidence discloses that pursuant to the demand of the claimant, respondents #1 made additional payments. . . . Respondents #1 acknowledged their obligation to pay attorney fees on the permanent total disability award. The evidence preponderates that respondents #1 have made advance payments of compensation to the claimant in the amount of $23,815.24, as well as $7,145.55, in advance attorney fee.

As noted above, the maximum obligation payment of permanent total disability benefits is obtainable and identifiable. In the present claim the maximum obligation of respondents #1 is $182,650.00. The evidence reflects that the advance payments of compensation made to the claimant by respondents #1 will result in them reaching the end of their obligation on September 13, 2017. The evidence further reflects that respondent #[2] start up date for the payment of permanent total disability benefits to the claimant is February 18, 2019. The commencement period of payment by respondent #2 to the claimant may not be advanced or accelerated by advance payments of compensation by respondents #1. *Hill v. CGR*, 282 Ark. 35, 665 S.W.2d 274 (1984). While advance payments of compensation by respondents #1 may result in a lapse in the payment of benefits to the claimant before the start up date of payments by respondent #2, the evidence preponderates that the claimant will have been the recipient of all appropriate indemnity benefits. . . . While the above evidence preponderates that respondents #1 have made advance payment of attorney fees to the claimant's attorney in the amount of $7,145.55, the claimant maintains that payments of attorney fee made by respondent #1 failed to include the payment of interest. The above interest provision does not provide for the payment of interest on attorney fees, but rather "compensation" awarded.

While the claimant asserts that issues raised by respondent #2 are barred pursuant to res judicata, the evidence preponderates that the issues addressed during the September 26, 2014, hearing were not previously addressed in the earlier May 25, 2012, hearing. In addition to the differences in the issues outlined in the Pre-hearing Orders, the witnesses noted the differences in the issues set forth in the Pre-hearing Orders. The issues presented during the September 26, 2014, hearing were not ripe for litigation at the time of the May 25, 2012, hearing, and as such not capable of being litigated.

Subsequently, on September 14, 2015, the Commission in a unanimous opinion affirmed and adopted the ALJ's opinion as its own. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In so

doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id*. Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id*.

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Id*. Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id*. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id*. Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id*. Questions of law are reviewed de novo. *Johnson v. U.S. Food Serv., Inc.*, 2013 Ark. App. 86.

Appellant contends that the Commission erred in holding that he was not entitled to simultaneous payments of PPD benefits in a lump sum and accrued PTD benefits under the doctrines of law of the case and res judicata. He argues that the August 23, 2013 opinion, which was adopted by the Commission, specifically ordered simultaneous payments. He

acknowledges that such an award would have been error; however, he alleges that appellees failed to appeal that issue and are now barred from doing so.

Ordinarily, the doctrine of res judicata, either in the form of claim preclusion or issue preclusion, is applied based on a final judgment issued by a court. *Craven v. Fulton Sanitation Serv., Inc.*, 361 Ark. 390, 206 S.W.3d 842 (2005). However, the doctrine has also been applied to issues determined by final judgment or decree of an administrative agency. *Id.* Thus, even though the Commission is not a court, its awards are in the nature of judgments, and the doctrine of res judicata applies to its decisions. *Perry v. Leisure Lodges, Inc.*, 19 Ark. App. 143, 718 S.W.2d 114 (1986). Furthermore, even in workers' compensation cases, matters decided in a prior appeal are the law of the case and govern our actions in the present appeal to the extent that we would be bound by them even if we were now inclined to say that we were wrong in those decisions. *White v. Gregg Agric. Enters.*, 72 Ark. App. 309, 37 S.W.3d 649 (2001).

The key to resolving appellant's arguments on appeal requires us to interpret the August 23, 2013 opinion. As a general rule, judgments are construed like any other instruments; the determinative factor is the intention of the court, and by analogy the Commission or ALJ, as gathered from the judgment itself and the record. *Magness v. McEntire*, 305 Ark. 503, 808 S.W.2d 783 (1991). We have followed this general rule in stating that judgments should be reviewed by looking to the judgment itself, pleadings, and any evidence presented. *Id.* Moreover, while we look to the language in which an order is couched, we also look to whether the evidence supports the ruling. *Ark. State Bank Comm'r v. Bank of*

*Marvell*, 304 Ark. 602, 804 S.W.2d 692 (1991).

After reviewing the entire opinion, we do not agree with appellant's interpretation. Although the opinion addressed appellant's entitlement to PPD and PTD because Respondents No. 1 controverted both PPD in excess of 6.25% and PTD, the opinion did not specifically order Respondents No. 1 to simultaneously pay both benefits. To do so would necessarily require the ALJ to have found appellant 153% disabled in contravention of statutory authority. *See* Ark. Code Ann. §§ 11–9–501(b) and 519(a). However, the ALJ specifically found that appellant had sustained 53% anatomical impairment to the right foot and that the "evidence preponderates that he has been rendered permanently and totally disabled within the purview of the Arkansas Workers' Compensation Act." Furthermore, a review of the record indicates that *how* the benefits were to be paid was not at issue during the first hearing. In fact, at the first hearing, appellant argued that he was entitled to PTD and *alternatively* PPD. Thus, res judicata and law of the case do not dictate this case, and we must affirm on this point on appeal.

Appellant next contends that Respondents No. 1's payment of the PPD scheduled injury award of $23,675.63 was not an advance payment of compensation pursuant to Arkansas Code Annotated section 11-9-807(a) that entitles Respondents No. 1 to a credit toward their maximum obligation for PTD benefits. Furthermore, appellant argues that the Commission erred in adopting the ALJ's finding that Respondents No. 1 had made an advance payment of attorney's fees in the sum of $7,145.55 on the lump sum PPD. He additionally argues that there was no evidence suggesting that the parties intended for the

SLIP OPINION

payments to be considered advance payments.

In *Legacy*, this court held that an insurance carrier was entitled to a credit for payments made toward a 29% permanent–anatomical–impairment rating against its $75,000 maximum liability for PTD benefits. *Legacy*, *supra*. This court reasoned that Arkansas Code Annotated section 11-9-501(c)(2) stated that "[a]ny weekly benefit payments made after the commission has terminated temporary total benefits shall be classified as warranted by the facts in the case and as otherwise provided for in this chapter." There, the parties had stipulated that the claimant's healing period had ended on December 10, 2002, at which time he was permanently and totally disabled, and the Commission had effectively adopted December 10 as the date that payments for TTD benefits ended and permanent disability payments began. *Legacy*, *supra*. Therefore, all payments that were made after December 10, 2002, had been classified by the Commission as PTD payments that could be applied toward the $75,000 maximum pursuant to section 11-9-502. *Id.*

Although appellant argues that our opinion in *Legacy* is distinguishable because the payments made by Respondents No. 1 were not voluntary but were required by the August 23, 2013 opinion as adopted by the Commission, he is mistaken because appellant's arguments are premised on his inaccurate interpretation of the ALJ's August 23, 2013 opinion as already explained above. Appellant's healing period had ended on June 10, 2011, and Respondents No. 1 were entitled under *Legacy* to receive a credit for any PPD payments made toward their maximum obligation for PTD benefits. Appellant was not entitled to simultaneously receive both PPD and PTD, and Respondents No. 1 were entitled to credit for the advance payments

11

they made to appellant. Thus, the Commission did not err in adopting the ALJ's finding that "[t]he evidence preponderates that respondents #1 have made advance payments of compensation to the claimant in the amount of $23,815.24, as well as $7,145.55, in advance attorney['s] fee[s]."

Appellant contends in his third point on appeal that he is entitled to receive PTD benefits at the rate of $455.00 per week from the end of his healing period on June 10, 2011, for the rest of his life without any lapse in payments under the doctrines of law of the case and res judicata. This argument also fails because it is premised on his inaccurate interpretation of the August 23, 2013 opinion as adopted by the Commission and because the doctrines of law of the case and res judicata do not apply. We have already determined that the Commission did not err in adopting the ALJ's finding that Respondents No. 1 were entitled to credit for any advance payments made. The Commission found that the maximum obligation of Respondents No. 1 was $182,650 and that the evidence reflected that the advance payments would result in them reaching the end of their obligation on September 13, 2017. Additionally, Respondent No. 2 will not start making payments for PTD benefits until February 18, 2019, leaving appellant a gap in his benefits. However, our supreme court has previously held that the commencement period of payment by Respondent No. 2 to the claimant may not be advanced or accelerated by advance payments of compensation by Respondents No. 1. *See Hill v. CGR*, 282 Ark. 35, 665 S.W.2d 274 (1984).

Alternatively, appellant argues for the first time on appeal that the Commission inaccurately calculated that Respondents No. 1 would stop making payments on September

12

13, 2017, and that the date should be extended by 22.36 weeks. However, because appellant failed to raise this argument below, it is not preserved for appellate review. *Maulding v. Price's Util. Contractors, Inc.*, 2009 Ark. App. 776, 358 S.W.3d 915.

Appellant lastly contends that Respondents No. 1 owe interest on the balance of the disability benefits. In his brief, appellant openly acknowledged that the ALJ and Commission did not address this argument in their opinions, but he alleges that they did so "presumably" because they had determined that advance payments were made. However, we are precluded from addressing this argument on appeal; we will not presume a ruling as it is an appellant's responsibility to obtain a ruling to preserve an issue for appeal. *TEMCO Const., LLC v. Gann*, 2013 Ark. 202, 427 S.W.3d 651; *Maulding v. Price's Util. Contractors, Inc.*, 2010 Ark. App. 51. Thus, we affirm.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*Rogers, Coe & Sumpter*, by: *Joe M. Rogers*, for appellant.

*David L. Pake*, for appellee Death & Permanent Total Disability Trust Fund.