

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-17-95

| | |
|---|---|
| GABRIEL GARCIA<br>APPELLANT<br><br>V.<br><br>JENSEN CONSTRUCTION<br>COMPANY and ARCH INSURANCE<br>COMPANY<br>APPELLEES | **Opinion Delivered:** September 13, 2017<br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. G409589]<br><br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

This is a one-brief appeal from the Arkansas Workers' Compensation Commission's (Commission) October 14, 2016 opinion reversing the February 10, 2016 opinion of the administrative law judge (ALJ) by finding that appellant failed to prove by a preponderance of the evidence that he sustained a compensable injury. Appellant's sole argument on appeal is that the Commission erred in finding that appellant failed to prove he sustained a compensable injury while acting in the course and scope of his employment. We affirm.

On March 11, 2014, having worked for appellee for eight years, appellant was working pouring concrete in a hole when he slipped on a piece of rebar that was being used as a ladder. He fell and his feet became twisted in the rebar, but he was in a harness and that kept him from hitting the ground. He has no memory of how he got out of the hole. His coworkers raised him to the ground in a "man basket." He initially refused to go to the hospital, but was taken to Baptist Health Stuttgart four hours later by Grand Prairie

Emergency Medical Services (GPEMS) after he had a seizure. He was discharged on March 13, 2014, with no brain or head injury diagnoses from Dr. Dennis Yelvington.

Appellant was taken to another emergency room on April 11, 2014, after suffering another seizure; he had not been working for appellee at the time. A CT scan showed swelling and suggested a laceration according to Dr. Ralph Noah. Dr. Merlin Kilbury found appellant's head to be "normocephalic" and diagnosed him with grand mal seizures. On April 15, 2014, appellant was diagnosed with convulsions by Dr. James Rutter at the Internal Medicine Clinic. On May 1, 2014, Dr. Rutter stated that appellant no longer had seizures and permitted him to return to work with restrictions on May 2, 2014. Appellant continued treatment for seizures with Dr. Ornette Gaines at the Community Clinic.

A hearing on appellant's claim was held on November 13, 2015, during which appellant and two coworkers were the sole witnesses.[1] The issues before the ALJ were compensability; reasonable and necessary benefits; appellant's entitlement to temporary-total-disability benefits from March 11, 2014, to a date yet to be determined; and controverted attorney's fees. In his February 10, 2016 opinion, the ALJ found that

> 2.  The employment relationship existed on March 11, 2014, during which time the claimant earned an average weekly wage of $660.00, generating weekly compensation benefit rates of $440.00/$330.00, for temporary total/permanent partial disability.

---

[1]This court notes that appellant included a verbatim copy of the entire transcript from the hearing below in the addendum. Arkansas Supreme Court Rule 4–2 requires that an appellant abstract "the material parts of all the transcripts (stenographically reported material) in the record." Ark. Sup. Ct. R. 4–2(a)(5). Arkansas Supreme Court Rule 4–2(a)(8) mandates that an appellant's addendum contain "copies of the non-transcript documents in the record on appeal[.]" Accordingly, while appellant did abstract the hearing, it was improper for him to include the copy of the transcript in the addendum.

3.      On March 11, 2014, the claimant sustained an injury arising out of and in the course of his employment when he suffered an accidental fall and suffered a blow to the head.

4.      The claimant was temporarily totally disabled as a result of the March 11, 2014, compensable injury for the period commencing March 12, 2014, through March 18, 2014, and April 11, 2014, continuing though the end of his healing period, a date to be determined.

5.      The respondents shall pay all reasonable hospital and medical expenses arising out of the injury of March 11, 2014.

Appellees filed their notice of appeal to the full Commission on February 24, 2016. The Commission filed its order on October 14, 2016, finding that appellant did not establish a compensable injury by medical evidence supported by objective findings. This timely appeal followed.

## I. *Standard of Review*

In reviewing decisions from the Commission, we view the evidence and all reasonable inferences in the light most favorable to the Commission's decision and affirm if it is supported by substantial evidence.[2] Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.[3] The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision.[4]

---

[2]*Turcios v. Tyson Foods, Inc.*, 2016 Ark. App. 471, at 3, 504 S.W.3d 622, 624 (citing *Skinner v. Tango Transp., Inc.*, 2016 Ark. App. 304, 495 S.W.3d 637).

[3]*Id.*

[4]*Fulbright v. St. Bernard's Med. Ctr.*, 2016 Ark. App. 417, at 4, 502 S.W.3d 540, 543 (citing *Williams v. Baldor Elec. Co.*, 2014 Ark. App. 62).

We defer to the Commission's findings of credibility and the resolution of conflicting evidence.[5]

A compensable injury is an accidental injury causing internal or external harm that arises out of and in the course of employment.[6] A compensable injury must be established by medical evidence supported by objective findings, which are findings that cannot come under the voluntary control of the patient.[7] A claimant bears the burden of proving a compensable injury by a preponderance of the credible evidence.[8]

Appellant's sole argument on appeal is the Commission erred in its findings that appellant failed to prove he sustained a compensable injury while acting in the course and scope of his employment. He makes several sub-arguments in support thereof, which this court addresses as follows.

## II.    *Credibility*

Appellant mainly argues that his "credible" testimony supports a finding that he was injured while performing employment activities, specifically that he hit his head during the fall which thereby caused the seizures. Matters of credibility are exclusively within the

---

[5]*Id.* (citing *Moore v. Ark. State Highway & Transp. Dep't*, 2013 Ark. App. 752).

[6]*Ark. Methodist Hosp. v. Hampton*, 90 Ark. App. 288, 294, 205 S.W.3d 848, 852–53 (2005) (citing Ark. Code Ann. § 11–9–102(4)(A)(i) (Supp. 2003)).

[7]*Lowe's Home Ctrs., Inc. v. Pope*, 2016 Ark. App. 93, at 2, 482 S.W.3d 723, 724 (citing Ark. Code Ann. § 11–9–102(4)(D) and (16)(a)(i) (Repl. 2012)).

[8]*Long v. Wal-Mart Stores, Inc.*, 98 Ark. App. 70, 80, 250 S.W.3d 263, 272 (2007) (citing Ark. Code Ann. § 11–9–102(4)(E)(i) (Repl. 2002)).

SLIP OPINION

Commission's domain and the testimony of an interested party is always considered to be controverted.[9]

Appellant testified:

I fell when we were pouring concrete and one of the iron strings slid to one side and I fell back. After that I don't remember anything.

. . . .

I fell because one of the strings was not well tied up and it slid to one side.

. . . .

I don't remember hitting my head but my head hurt when I woke up.

. . . .

I definitely remember I fell because the rod was not well tied. I definitely remember that. My memory gap begins after I slipped. I hurt the back of my head left side.

Despite initially testifying that he remembered nothing after he slipped, on cross-examination, he testified that he "hit the rods that were behind [him] before [he] fell, on the way down." It is not unreasonable for the Commission to find credibility in appellant's former statement rather than the latter, as it apparently did. Of testimony provided by other workers on the site at the time of his slip, Jose Molina testified that he was below appellant when he fell, "really didn't pay attention[,]" and "didn't actually see [appellant] fall." Michael McFarland, who was above appellant at the time of his injury, testified that his first

---

[9]*Sally v. Serv. Master*, 2009 Ark. App. 209, at 4, 301 S.W.3d 7, 10 (citing *Plante v. Tyson Foods, Inc.*, 319 Ark. 126, 890 S.W.2d 253 (1994), and *Cooper v. Hiland Dairy*, 69 Ark. App. 200, 11 S.W.3d 5 (2000)).

indication something had happened was "a lot of noise, voices, and people hollering" and that he did not see when appellant "actually fell."

Molina testified additionally that while he helped lift appellant out of the hole in the man basket, he did not see any blood or "any indication of blood or trauma to the head." McFarland testified to "not see[ing] any blood or indication of physical contact her [sic] injury" in helping to get appellant out of the hole. He testified that after appellant fell, his eyes "rolled back and he was shaking," noting that when he "got to [appellant] he was convulsing and his eyes rolled back in his head," though McFarland admitted "how that happened [he] had no idea." Finally, McFarland testified that appellant had a second seizure on the same day about four hours later at "roughly 230" while he was standing "about a foot away" from McFarland as they were "face-to-face talking." Despite appellant's assertion that as a result of the slip, he "fell into the pit, striking his head either on the side of the pit or part of the rebar inside causing injury to his brain[,]" said assertion is not supported by the testimony below.

### III.  *Objective Evidence*

Appellant argues that there was objective evidence to support a finding that he sustained a compensable injury while performing employment activities. Objective findings are "those findings which cannot come under the voluntary control of the patient."[10] If the claimant fails to present evidence of objective medical findings, then compensation must be

---

[10]*Fred's, Inc. v. Jefferson*, 89 Ark. App. 95, 98, 200 S.W.3d 477, 479 (2004) (citing Ark. Code Ann. § 11-9-102(16) (Repl. 2002)).

denied.[11] Objective medical evidence is necessary to establish the existence and extent of an injury but not essential to establish the causal relationship between the injury and work-related accident.[12]

The objective evidence appellant relies on is the presence of a brain injury on a CT scan conducted "subsequent to the date of the injury." The CT scan referred to was conducted by Dr. Ralph Noah on April 11, 2014, during an emergency-room visit exactly one month after appellant's March 11, 2014 accident. Dr. Kilbury's emergency-room-report notes from the April 11, 2014 visit state:

> History of Present Illness
>
> Patient is a 30-year old worker who was brought by ambulance from rolling he apparently had a seizure prior to coming to the emergency room with the EMTs arrived he was somewhat postictal and has waken up substantially on the ride to emergency room here he gives a history of having had a seizure several months ago in Arkansas he is not sure what workup was undertaken he does not think he had a CT head he has no history of seizures prior to these 2 of the[13]
> . . . .
> Medical Decision Making
>
> Patient clearly had a grand mal seizure and received scalp laceration he gives history of having had similar episode 3 or 4 weeks ago a CT scan is done which is normal except for the soft tissue swelling. Laboratory data shows no abnormalities other than liver enzyme elevations urine drug screen is negative patient is given Sarah Rex 500 mg iv and placed on Dilantin 100 mg 3 times a day it appears that he had an adult onset epilepsy and will need to be on anti-seizure medications at least for a period of time I have suggested that he needs a primary care physician[.]

---

[11]*Id*. (citing Ark. Code Ann. § 11–9–102(4)(D); *Mikel v. Engineered Specialty Plastics*, 56 Ark. App. 126, 938 S.W.2d 876 (1997)).

[12]*Wal-Mart Stores, Inc. v. Stotts*, 74 Ark. App. 428, 58 S.W.3d 853, 855 (2001) (citing *Wal-Mart Stores, Inc. v. VanWagner*, 337 Ark. 443, 990 S.W.2d 522 (1999)).

[13]The sentence stops as quoted.

Dr. Kilbury's notes appear to state the laceration resulted from the seizure appellant experienced on that date or, at a minimum, could be read that way. Dr. Noah's impressions from the CT scan without contrast were "no acute intracranial process" and "Left parietal soft tissue swelling with associated subcutaneous air suggesting laceration."

However, the record shows that appellant was taken to the emergency room on March 11, 2014, as well. Dr. Yelvington's examination of the general appearance of appellant's head at that time was "Normocephalic, without obvious abnormality, atraumatic." Dr. Salman Hashmi's report on the visit states that "Pt was at work when he had a witnessed seizure Patient states that he fell and passed out. No prior history of seizures." Dr. Hashmi's CT scan of head without contrast conducted on that date showed the following findings:

> Brain shows normal gray-white matter differentiation. There is no intracranial hemorrhage, midline shift or mass effect. The ventricles and extra-axial fluid spaces are normal in size and configuration. The mastoids and paranasal sinuses are well aerated. The orbital soft tissues are grossly normal in appearance.

The impression given was "[n]o acute intracranial findings."

Appellant's entire objective-finding argument—short in an already skeletal brief—relies totally on a CT scan taken a month after the accident, during an emergency-room visit following yet another seizure in which appellant was "rolling." In order to prove a compensable injury the claimant must prove, among other things, a causal relationship between his employment and the injury.[14] The determination of whether a causal

---

[14]*Long*, 98 Ark. App. at 80, 250 S.W.3d at 272 (citing *Crawford v. Single Source Transp. Fidelity & Cas. Ins. Co.*, 87 Ark. App. 216, 189 S.W.3d 507 (2004)).

SLIP OPINION

relationship exists is a question of fact for the Commission to determine.[15] This court cannot disagree with the Commission's finding that "there is no probative evidence demonstrating that claimant injured his head." The record is devoid of objective medical evidence showing the existence of a brain injury on March 11, 2014, and is also devoid of a causal connection between the March 11, 2014 work-related accident and the brain injury found in the April 11, 2014 CT scan.

While objective medical evidence is not essential to establish the causal relationship between the accident and the disability, some evidence is required for the same.[16] Questions of causation in compensation cases must be answered in light of the facts peculiar to each case, and the answer in one is of little aid to an answer in another.[17] There is no evidence and appellant does not argue that he was working for appellee during the April 11, 2014 seizure, which preceded the brain scan on which he relies. There is no evidence and appellant makes no argument for the existence of a causal connection between the suggested laceration in the April 11, 2014 CT scan and the March 11, 2014 accident, given that the March 11, 2014 CT scan revealed no abnormal findings. Furthermore, appellant fails to argue against the possibility that the April 11, 2014 seizure may have been an intervening cause for the suggested laceration.

---

[15]*Id.* (citing *Smith-Blair, Inc. v. Jones*, 77 Ark. App. 273, 72 S.W.3d 560 (2002)).

[16]*Myers v. City of Rockport*, 2015 Ark. App. 710, at 6, 479 S.W.3d 33, 38 (citing *Gerber Prods. v. McDonald*, 15 Ark. App. 226, 691 S.W.2d 879 (1985)).

[17]*Id.* (citing *Pace Corp. v. Burns*, 251 Ark. 311, 472 S.W.2d 78 (1971)).

Finally, despite appellant's initial refusal to go to the hospital, he was eventually transported to Baptist Health Stuttgart by GPEMS after having a seizure four hours after his accident. The report from GPEMS states that appellant was found "lying on the ground" and his chief complaint was "seizure-like activity." The report states that "co-workers said pt. had previous episode appx 10:45 this morning but said he got right back up." The report states that there was "no trauma" to appellant's head, face, back, or neck. Appellant's argument does not address the lack of medical evidence of trauma at, or near in time to, the time of the accident and so fails to prove a causal connection between the accident and the asserted injury from April 11, 2014.

IV. *Idiopathic Injury*

Appellant's final argument relies on *Crawford v. Single Source Transportation*,[18]

> [T]he claimant fell from his truck because his knee gave out. The knee condition was not related to his employment but was the cause of his fall. Nonetheless, Court of Appeals reversed the commission held [sic] the claimant had sustained a compensable injury. Specifically, the court noted while an idiopathic injury is not related to the claimant's employment, it can result in a compensable injury if conditions related to the employment contribute to the risk of injury or aggravate the injury itself.

This is a misreading of *Crawford*, which reversed the Commission on finding that the appellant's injury there was "neither idiopathic or unexplained but rather he sustained a specific-incident injury."[19] This court went on to distinguish an idiopathic injury from an unexplained cause:

---

[18]87 Ark. App. 216, 189 S.W.3d 507 (2004).

[19]*Id.*, 87 Ark. App. at 220, 189 S.W.3d at 510.

An idiopathic injury is one whose cause is personal in nature, or peculiar to the individual. Injuries sustained due to an unexplained cause are different from injuries where the cause is idiopathic. Where a claimant suffers an unexplained injury at work, it is generally compensable. Because an idiopathic injury is not related to employment, it is generally not compensable unless conditions related to the employment contribute to the risk. Employment conditions can contribute to the risk or aggravate the injury by, for example, placing the employee in a position which increases the dangerous effect of a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle.[20]

Appellant is arguing that a specific-incident injury—a hit to the head during a fall—caused injury to appellant. He has not made an argument for an idiopathic injury or an injury from an unexplained cause. There is no evidence of a specific-incident injury as no one witnessed appellant's slip and fall and he has no memory of his fall, which is unlike *Crawford* in which the appellant testified that his knee "gave," causing him to fall as he stepped out of his vehicle. *Crawford* is not on point to the matter before this court.

## V.  *Conclusion*

This court cannot find that the Commission erred in finding that appellant failed to prove he sustained a compensable injury while acting in the course and scope of his employment due to there being no objective medical evidence in support thereof. Accordingly, we affirm.

VIRDEN and GLADWIN, JJ., agree.

*McKinnon Law Firm*, by: *David L. Schneider*, for appellant.

One brief only.

---

[20]*Id*. at 220–21, 189 S.W.3d at 511 (internal citations omitted).