Cite as 2020 Ark. App. 53

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-19-483

| | |
|---|---|
| ELIZABETH BLEDSOE <br><br> APPELLANT <br><br> V. <br><br> VISKASE COMPANIES, INC., AND TRUMBALL INSURANCE COMPANY <br><br> APPELLEES | **Opinion Delivered** January 29, 2020 <br><br> APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G605236] <br><br><br> AFFIRMED |

### N. MARK KLAPPENBACH, Judge

Appellant Elizabeth Bledsoe appeals from the opinion of the Arkansas Workers' Compensation Commission that affirmed and adopted the findings of fact and conclusions of law made by the administrative law judge (ALJ) in favor of appellees. Bledsoe was admittedly injured in a workplace accident on June 7, 2016, that caused a hairline fracture in her sternum. The employer accepted the claim and paid benefits related to the sternum injury. Bledsoe also sought benefits for a cervical injury that she contended she sustained in the same accident, but she did not prevail on that aspect of her claim. On appeal, Bledsoe contends that the findings related to the denial of her claim for cervical-injury benefits are not supported by substantial evidence. We affirm.

Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion, and when it does, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Woods v. Tyson Poultry, Inc.*, 2018 Ark. App. 186, 547

S.W.3d 456. In reviewing decisions from the Commission, we view the evidence and all reasonable inferences in the light most favorable to the Commission's decision and affirm if it is supported by substantial evidence. *Skinner v. Tango Transp., Inc.*, 2016 Ark. App. 304, 495 S.W.3d 637. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether this court might have reached a different result from the Commission. *Id.* Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.* When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions of the Commission. *Lybyer v. Springdale Sch. Dist.*, 2019 Ark. App. 77, 568 S.W.3d 805.

Bledsoe, a woman in her late forties, worked for appellee, Viskase Companies, Inc., a hotdog casing manufacturer. On June 7, 2016, Bledsoe was operating a machine that pulled and rolled hotdog casings onto reels. She was manually guiding hotdog casing when a reel fell and hit her left forearm and chest. She estimated that the part that hit her weighed about thirty pounds. She reported the accident to her employer, which offered medical treatment. Instead, Bledsoe sat in the break room and applied an ice pack. Bledsoe's schedule was three days on and then three days off, and her injury occurred on her third day of work. By June 17, Bledsoe was still hurting, so the employer took her to the emergency room.

The June 17, 2016 emergency-room medical records indicated that Bledsoe's chief complaint was "chest wall pain," and she described the pain as moderate. A CT scan

revealed a "linear hairline fracture" in her sternum, and physical examination indicated that she had swelling and tenderness in her sternum, but Bledsoe's neck had "soft, easy range of motion," with no tenderness or limits in range of motion. She was prescribed twelve Tylenol with codeine to treat her sternum pain and directed to follow up with her doctor if her symptoms did not improve in ten days. Bledsoe was placed on light duty at work.

Bledsoe presented to Dr. Thakor at Great River Medical Center on June 21 for a follow up on her sternum injury. She complained of sternum pain that was not well controlled by her prescription medication. She also complained of upper back and neck pain. Dr. Thakor noted tenderness and spasm in the cervical region. She was prescribed pain and muscle-spasm medications.

On June 28, Bledsoe presented to her family doctor, Dr. Cullom, complaining of ankle swelling. She told Dr. Cullom about her chest injury; there was no mention of neck pain or spasms, either by patient history or by physical examination.

Bledsoe was referred to an orthopedic specialist, Dr. Yao, to follow up on her sternum injury, and Dr. Yao saw her several times starting in August 2016. Dr. Yao diagnosed her with the clavicle fracture and, given Bledsoe's complaints of neck and back tenderness, a cervical and thoracic strain. A September 2016 MRI of her cervical spine showed mild degenerative spondylosis and a small disc protrusion at C5-6. Nerve-conduction studies revealed no nerve injury. Also in September 2016, Dr. Yao determined that Bledsoe's sternal fracture had healed. Dr. Yao relied on Bledsoe's statements at the first clinical visit in August 2016 in opining that her neck problem was causally connected to her work accident.

Bledsoe continued on light duty at work, but her last day of work was December 2, 2016. Thereafter, she received six months of short-term disability benefits and then commenced a two-year period of long-term disability benefits.

Bledsoe was treated by Dr. Abraham, a neurosurgeon, beginning in April 2017, ten months after the work accident. Dr. Abraham performed a carpal-tunnel release surgery on her left hand in August 2017. Dr. Abraham's medical notes indicated that Bledsoe also complained of neck and shoulder pain, which she attributed to the June 2016 work accident. Dr. Abraham consequently attributed her neck and shoulder pain to the work accident based on Bledsoe's explanation. Her cervical problem did not require a surgical intervention; Dr. Abraham recommended physical therapy. Dr. Abraham opined in a letter that Bledsoe's neck pain was caused by the work accident.

Dr. Yao was unaware of what Bledsoe's earlier medical records disclosed until he was deposed in March 2018. Dr. Yao was advised of the information gathered in her first visit to the emergency room ten days after the work accident, which had particular assessments about her neck and cervical region showing no complaints or objective signs of cervical injury. With that knowledge, Dr. Yao stated that, as to what was seen on the September 2016 MRI, it was "not possible to determine if maybe it's degenerative or perhaps traumatic." Dr. Yao ultimately stated his opinion that her cervical problem was not related to the workplace accident unless the earlier medical records could be clarified or edited by those medical providers.

Dr. Abraham was deposed in April 2018 and was presented with Bledsoe's earlier medical records. At that point, Dr. Abraham acknowledged that he could not identify the

cause of the cervical problem, stating that it could be degenerative or could be related to trauma. Nonetheless, Dr. Abraham stood by his opinion that, given Bledsoe's statements to him, he thought her neck pain was related to the work accident. He said that Bledsoe's two-week delay in reporting neck pain would "not necessarily" mean the two were not causally related and that the accident "could cause her to have some difficulties with her neck." When informed of the absence of neck issues at the emergency-room visit, the doctor was asked if that indicated her neck problems were from another source, and he replied, "I really don't know."

Bledsoe denied having any neck problems prior to the June 2016 accident at work, and she denied having done anything else that might have hurt her neck after the work accident. She was convinced that her cervical problem was caused by the work accident.

Bledsoe's shift supervisor, Donnie Ammons, testified about the job Bledsoe did and how the machine worked; he presented photographs of the machine and a person working the machine. Ammons remained Bledsoe's supervisor until she quit working and stated that she never complained to him about neck pain.

On this evidence, the ALJ found that although Bledsoe had a compensable injury to her sternum, she failed to prove by a preponderance of the evidence that she suffered a compensable cervical injury. The ALJ reasoned that Bledsoe did not complain of neck or back pain until two weeks after the work accident; that she was seen by medical providers ten days after the accident, and those records did not disclose any cervical problems; that Dr. Yao was unable to establish a nexus between her neck complaints and the work accident; that Dr. Abraham was unable to testify within a reasonable degree of medical certainty that

5

the work accident caused her neck complaints; that the evidence supported the existence of a noncompensable preexisting degenerative condition in her cervical spine; and that Bledsoe had failed to carry her burden to prove by a preponderance of the credible evidence that she sustained a compensable injury or compensable aggravation to her cervical spine. Absent a causal connection, Bledsoe's claim for compensation related to her cervical issue was denied.

Bledsoe argues on appeal that the causal connection between her cervical problem and the work accident did not have to be proved by medical evidence, but that even so, Dr. Abraham provided a medical opinion that her cervical problem was causally related to the work accident. We agree with Bledsoe that medical-opinion testimony is not essential to establish the causal relationship between the injury and a work–related accident. *See Kiswire Pine Bluff, Inc. v. Segars*, 2018 Ark. App. 296, 549 S.W.3d 410. However, when a medical opinion is relied on to establish compensability, it must be stated within a reasonable degree of medical certainty. *See* Ark. Code Ann. § 11-9-102(16)(B) (Repl. 2012). Dr. Yao ultimately opined that her cervical issues were not related to the work accident. It is the Commission's duty to use its experience and expertise in translating the testimony of medical experts into findings of fact and to draw inferences when testimony is open to more than a single interpretation. *Ark. Health Ctr. v. Burnett*, 2018 Ark. App. 427, 558 S.W.3d 408.

The Commission relied on the fact that Bledsoe did not convey any problems with her neck for two weeks, and the initial medical records ten days after the accident affirmatively indicated that there were no problems with her neck. Whether a causal connection between employment and an injury exists is a question of fact for the

6

Commission.  *Webb v. Wal-Mart Assocs., Inc.*, 2018 Ark. App. 627, 567 S.W.3d 86.  Even if we might have weighed the evidence differently, based on our standard of review, we cannot say that fair-minded persons with the same facts before them could not have reached the conclusions of the Commission.  Thus, we affirm the Commission's decision.

Affirmed.

VAUGHT and HIXSON, JJ., agree.

*Caldwell Law Firm, P.A.*, by: *Andy L. Caldwell*, for appellant.

*Smith, Williams, Hughes & Meeks, LLP*, by: *Gene Williams*, for appellees.